IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MEGAN and JACOB MCKELLIPS,           )
Individually and as Co-Personal       )
Representatives of the Estate of      )
Wesley Jacob McKellips                )
                                      )
                   Plaintiffs,        )
                                      )
v.                                    )          Case 2:13-cv-02393-JTM-TJJ
                                      )
KUMHO TIRE U.S.A., INC. and           )
KUMHO TIRE CO., INC.                  )
                                      )
                   Defendants.        )

## PLAINTIFFS' MOTION TO COMPEL DISCOVERY
## AND BRIEF IN SUPPORT

Plaintiffs Megan and Jacob McKellips, pursuant to Local Rule 37.1, respectfully request that this Court strike Defendant Kumho Tire Co., Inc.'s ("Kumho") objections and compel complete and proper responses to Plaintiffs' First Request for Production and First Interrogatories. Plaintiffs also request oral argument on this Motion pursuant to Local Rule 7.2 and submit the following brief in compliance with Local Rule 7.1.

## Brief in Support

### I.     Factual Background

This is a product liability case in which a tire suffered a catastrophic tread separation, resulting in life-threatening injuries to pregnant Megan McKellips and the death of Wesley Jacob McKellips, the son she was expected to deliver in just over a month. The subject tire was a Kumho Road Venture AT tire manufactured in 2008 at a plant in Vietnam.

Steel belted radial tires such as the subject tire are comprised of an inner liner (the rubber layer that covers the interior surface of the tire), belts (the layers of steel wires under the tread

that reinforce the tread), and the tread (the sculpted part of the tire that contacts the roadway). *See* Exhibit A (Merriam-Webster photo and definitions). Prevulcanized rubber, called skim stock, is used to bind the steel belts together. *See* Exhibit B (December 2000 Wall Street Journal article).

In the early 2000s, news reports on catastrophic tire failures (tread separation) began to appear, indicating that vehicles suffering such an event become extremely difficult to control and that crashes were occurring in increasing numbers. *See* Exhibit C (Excerpt from June 2001 study). A tread separation begins as a separation at the edge of a belt, grows circumferentially and laterally along the edge of the belt, and develops into cracks between the belts. If the cracks grow large enough, they can result in tread separation, particularly at high speeds when the centrifugal forces acting on the tire are the greatest. *See* Exhibit D (Excerpt from October 2001 National Highway Transportation and Safety Administration (NHTSA) report). Studies have concluded that inner liner permeability and gauge has a strong influence on the generation of belt edge separation in radial tires. *See* Exhibit E (Excerpt from March 2010 NHTSA test).

In this case, Plaintiffs allege that the subject tire suffered a tread separation due to design defects, potentially including, but not limited to, low halobutyl content of the inner liner. They also allege that the subject tire failed due to manufacturing defects, potentially including, but not limited to, improper belt splicing, coincidental endings, and improper inner liner thickness (which could also be a design defect).

## II. Procedural Background

On June 26, 2014, Plaintiffs served their First Request for Production and First Interrogatories on Kumho. *See* Exhibit F (Plaintiffs' First Request for Production); Exhibit G (Plaintiffs' First Interrogatories). On September 5, 2014, Plaintiffs received Kumho's responses

to their First Request for Production, totaling 111 pages, and its answers to their First Interrogatories.  *See* Exhibit H (Kumho's Responses and Objections to Plaintiffs' First Request for Production); Exhibit I (Kumho's Answers and Objections to Plaintiffs' First Interrogatories).

On September 23, 2014, Plaintiffs' counsel sent Kumho's counsel a detailed Golden Rule Email regarding Kumho's deficient responses to Plaintiffs' discovery.  *See* Exhibit J (Plaintiffs' Golden Rule Email).  Kumho's counsel responded to that letter in a summary fashion on October 6, 2014.  *See* Exhibit K (Kumho's Letter in Response).

The parties attempted to resolve their discovery disputes telephonically on October 7, 2014.  During the conference, Kumho's counsel indicated that Kumho would "clean up" its discovery objections to make the disputed topics easier to identify and resolve.

On October 15, 2014, Plaintiffs' counsel emailed this Court a written description of the outstanding discovery issues and requested a telephone conference with the Court to resolve them.  *See* Exhibit L (Plaintiffs' Email to Court).  In a letter to this Court dated October 17, 2014, Kumho's counsel stated that Kumho had offered to "streamline" its objections.  *See* Exhibit M (Kumho's Letter to Court).

On October 27, 2014, Kumho communicated to Plaintiffs via email that its supplemental responses were forthcoming and would represent an effort "to streamline the objections to make clear [Kumho's] most significant problems with Plaintiffs' discovery requests."  *See* Exhibit N (Kumho's Email to Plaintiffs).  Later that day, this Court found that the parties' discovery disputes could not be resolved through a telephone conference and directed Plaintiffs to file a motion to compel.  *See* ECF Doc. 62.  At the end of the day, Kumho communicated to Plaintiffs via email that it would not be supplementing its discovery responses prior to briefing so as not to confuse the Court or the parties.  *See* Exhibit O (Kumho's Subsequent Email to Plaintiffs).

To date, Plaintiffs have received a mere 498 responsive documents from Kumho (149 of which are English translations) and Kumho has refused to withdraw any of its objections to Plaintiffs' First Request for Production and First Interrogatories.

Kumho's discovery responses are insufficient and improper for three main reasons: (1) they contain pages of boilerplate objections that run contrary to the law of this jurisdiction; (2) their scope has been unilaterally and improperly narrowed; and (3) they improperly assert trade secret privilege. In addition to discussing these three main topics, Plaintiffs will set forth their arguments regarding each disputed request for production and interrogatory.

## III.   Arguments and Authorities

### A.   Kumho's mass objections to Plaintiffs' discovery requests run contrary to the law of this jurisdiction.

Kumho lodged multiple general objections to the majority of Plaintiffs' requests for production and interrogatories, despite the District of Kansas' clear disapproval of such objections. *See Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 660-61 (D. Kan. 2004) ("This Court has on several occasions disapproved of the practice of asserting a general objection 'to the extent' it may apply to particular requests for discovery. This Court has characterized these types of objections as worthless for anything beyond delay of the discovery. Such objections are considered mere hypothetical or contingent possibilities, where the objecting party makes no meaningful effort to show the application of any such theoretical objection to any request for discovery."); *see also U.S. ex rel. Minge v. Turbine Engine Components Techn. Corp.*, Case No. 07-1212-MLB-KGG, 2011 WL 2607082, at *1 (D. Kan. July 1, 2011) (general objections are "worthless," "improper," and "leave [Plaintiffs] unsure whether or not [each] objection correlates to withheld information"); *Weichert v. E-Fin. Call Ctr. Support, LLC*, Case No. 13-2493-KHV-KGG, 2014 WL 4386155, at *3 (D. Kan. Sept. 5, 2014).

Kumho also provided conditional responses to several of Plaintiffs' requests for production and interrogatories.  The District of Kansas has condemned the practice of asserting an objection along with an answer as an improper reservation of rights.  *See Sprint Comm'n Co., L.P. v. Comcast Cable Comm'n, LLC*, Case Nos. 2:11-cv-02684, -02685, -02686, 2014 WL 54544, at *2-4 (D. Kan. Feb. 11, 2014) (Conditional responses are "invalid," "unsustainable," and "violate common sense" and "whenever an answer accompanies an objection, the objection is deemed waived and the answer, if responsive, stands."); *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, Case No. 13-2150-CM-KGG, 2014 WL 2815515, at *2-3 (D. Kan. June 23, 2014).

By asserting **more than 100 pages of objections**, making no effort to apply them, and withdrawing none of them, Kumho has wasted Plaintiffs' time and resources as well as those of this Court.  *See Swackhammer*, 225 F.R.D. at 661-62, 666 (the party resisting a discovery request based on overbreadth, vagueness, ambiguity, or undue burden objections bears the burden to support the objections).

**B.**    **Plaintiffs are entitled to discover information regarding tires that meet their definition of a substantially similar tire – one that may have the same components, designers, and/or plant of manufacture as the subject tire.**

Kumho lodged its objection to scope in responding to practically all of Plaintiffs' Requests for Production and Interrogatories.  As a result, Kumho's responses are severely limited by its unilaterally imposed and woefully narrow definition of the term "substantially similar."

**1.    "Substantially similar" products are discoverable.**

The "substantial similarity" rule is used to determine relevance in situations involving the admissibility of other accidents.  *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1246 (10th Cir.

2000).  The particular degree of similarity required to ensure the relevance of another accident depends on the theory of defect underlying the case.  *Id.*  In other words, a high degree of similarity is required when plaintiffs offer other accident evidence at trial to prove causation, but a lesser degree of similarity is required when the evidence is offered to show the defendant had notice of potential defects in its product.  *Id*. at 1246-47.  "The substantial similarity rule does not require identical products; nor does it require us to compare the products in their entireties. The rule requires substantial similarity among the variables relevant to the plaintiff's theory of defect." *Id.* at 1248.

But we are not at the trial stage yet.  Relevancy in the discovery context is broader than admissibility of evidence at trial.  *See In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1189 (10th Cir. 2009) ("In one respect, the term 'relevance' clearly is broader than 'admissibility' at trial: for purposes of discovery, '[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.' Fed. R. Civ. P. 26(b)(1)."); *High Point SARL v. Sprint Nextel Corp.*, Case No. 09-2269-CM-DJW, 2011 WL 3241432, at *4 (D. Kan. July 29, 2011) (citation omitted).  Therefore, although there are specific limits on the admissibility of similar products or lawsuits in a product liability case, such evidence need not be admissible to be relevant and, therefore, discoverable. *Orleman v. Jumpking, Inc.*, Case No. 99-2522-CM, 2000 WL 1114849, at *2 (D. Kan. July 11, 2000) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)).

> **2.    A court in this jurisdiction refused to adopt *Kumho's* definition of a substantially similar tire – one that is the same make, model, and size as the subject tire.**

The following case reveals the Tenth Circuit's position on "substantial similarity" in the discovery context.  Cooper Tire & Rubber Company was one of the defendants in *Petersen v.*

*DaimlerChrysler Corp.*, Case No. 1:06-cv-00108-TC-PMW, 2007 WL 2391151 (D. Utah Aug. 17, 2007), which involved the tread separation of a Cooper tire.  The plaintiffs alleged that the subject tire was defective due to (1) improper skim bonding between the steel belts, (2) ineffective and/or permeable inner liner, (3) lack of tread belt wedge, (4) ineffective anti-oxidants or anti-ozonants, and (5) lack of nylon cap plies.  *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1184 (10th Cir. 2009).  The plaintiffs argued in support of their motion to compel that Cooper's definition of similar tires – those that were manufactured to the same Green Tire Specification as the subject tire, at the same plant that created the subject tire, and during the year before and the year after the manufacture of the subject tire – was too narrow because it would allow discovery of only information regarding tires identical to the subject tire (*i.e.*, same make, model, and size).  The plaintiffs asserted that the underlying theory of their case should determine which tires were similar.  *Petersen*, 2007 WL 2391151, at *1.  The magistrate disagreed with Cooper's contention that the plaintiffs bore the burden at the discovery stage to show that different tires were substantially similar.  *Id*. at *2.  The magistrate reasoned:

> Cooper's arguments in favor of limiting the scope of discovery in this case appear to be somewhat misplaced. Those arguments seem better suited to the more narrow issue of admissibility of certain information, rather than the issue before the court, which is the broader question of whether that information is discoverable. [Citation omitted]. As previously noted, the scope of discovery under the federal rules is broad, and discovery is intended to help clarify and define the issues in a case. [Citations omitted]. Cooper's focus on the relationship of the information that Plaintiffs seek to the Subject Tire is overly narrow at this stage of the case and contrary to the intended purpose and scope of discovery. Indeed, Cooper's proposed definition of "similar" tires covers only those tires identical to the Subject Tire in make, model, and size. Given Plaintiffs' broad theory of the case, limiting discovery in the fashion Cooper proposes would be premature and could potentially deprive Plaintiffs of discovery supporting that theory. [Citation omitted]. Any concerns that Cooper may have about the degree of similarity of any discovery to the Subject Tire or the accident can be resolved if and when Plaintiffs attempt to admit that discovery into evidence.

*Id*. at 3.  The district court affirmed the magistrate's order in which he refused to adopt Cooper's limitation on the scope of discovery.  *See* 2007 WL 3286694 (D. Utah Oct. 29, 2007).

Cooper petitioned the Tenth Circuit for a writ of mandamus.  The Tenth Circuit found that the magistrate correctly applied the law of substantial similarity in the discovery context.  In doing so, the court made two key rulings.  One, **the court took the position that "a [plaintiff] should not be limited by its opponent's theory of the case in determining what is discoverable**," but rather by the information's relevance to the plaintiffs' claims.  *Cooper*, 568 F.3d at 1192.  The court found that the magistrate did not err in ordering discovery of similar, not just identical, tires given that the plaintiffs' claims were not purely speculative – a Cooper tire did suffer a tread separation and the plaintiffs identified five specific design and manufacturing defects they believed led to the separation.  *Id*. at 1192-93.  The court's second key ruling indicated that the relaxed substantial similarity requirement applies at the discovery stage as well as the trial stage.  The court found that the magistrate did not err in concluding that information regarding similar, not just identical, tires could tend to lead to discoverable evidence because the plaintiffs' theory of the case included a claim that Cooper had been on notice of the tread separation problem.  *Id*. at 1191.

> **3.    This Court should limit Plaintiffs' discovery based on their defect theories rather than Kumho's definition of a substantially similar tire.**

Just like the defendant in *Cooper*, Kumho impermissibly seeks to limit Plaintiffs' discovery based upon its own theory of what tires are substantially similar.  Kumho argues that the only tire relevant to this case is a Kumho Road Venture AT tire, size LT 235/85R16 and has unilaterally restricted Plaintiffs' discovery to Road Venture AT tires that are the same size as the subject tire.  Kumho's intention to limit discovery to a specific model number is a disingenuous argument to overly restrict discovery within the Road Venture AT tire line.  Kumho's true

intention is to restrict the information that is potentially available to the jury regarding the true nature of the defects in the design and manufacture of this tire and Kumho's notice of the problem.

Plaintiffs have tailored their requests and interrogatories to the tires they consider substantially similar to the subject tire – Road Venture AT tires of all sizes ("subject line tires"), Road Venture APT and MT tires ("subject model tires") and other Kumho passenger and light truck tires with the same inner liner halobutyl content or skim stock formulation. A Road Venture AT tire, regardless of size, contains the same general components (albeit at different ratios or sizes due to size change), is almost certainly designed by the same group of engineers, and is likely manufactured at the same plants using the same equipment. Plaintiffs suggest that in addition to sharing the "Road Venture" name, APT and MT tires also have the same components and designers as the subject AT tire. Therefore, information regarding the design and manufacture of these tires is relevant to Plaintiffs' theories of defect.

Plaintiffs' argument regarding substantial similarity is supported by the following tread separation cases. In *Hartsock v. Goodyear Dunlop Tires N. Am. LTD*, Case No. 2:13-cv-00419-PMD, 2013 WL 6919715 (D.S.C. Nov. 22, 2013), the plaintiff sought discovery of Goodyear G670RV tires without limitation to the size tire at issue in the case. There were ten different types of tires with the G670RV name and the defendant, Goodyear, argued that the other nine were not substantially similar because "they are manufactured in different plants, have different specifications, components, and, among other criteria, load capacities." *Id*. at *6. Goodyear went to great lengths to show the differences that existed among the ten tire types. At the motion to compel hearing, however, plaintiff's counsel explained that one of plaintiff's theories was that the subject tire's inner liner was too thin by design, and that information on the other nine tire

types could show that a reasonable alternative design existed.  Because Goodyear provided no information about the similarity of the inner liners in the ten tire types, the magistrate held that Goodyear improperly limited its discovery responses to the subject tire and ordered Goodyear to produce its materials relating to all ten types of G670RV tires.  *Id*. at *8.  The district court affirmed the magistrate's discovery order.  *See* 2014 WL 51237 (D.S.C. Jan. 7, 2014).

In *Albee v. Continental Tire North America, Inc.*, Case No. CIV. S-09-1145 LKK/EFB, 2010 WL 1729092 (E.D. Cal. 2010), the plaintiff alleged that the subject tire suffered a number of specific design and manufacturing defects, including problems with the inner liner and steel belt skim stock.  *Id*. at *1, 6.  The magistrate held that at the discovery stage, the plaintiff was entitled to investigate whether tires were similar with respect to these traits despite being a different size than the allegedly defective subject tire.  *Id*. at *6.  The district court affirmed the magistrate's discovery order.  *Id*. at *9.  In doing so, the court stated that "[i]f products share the specific design features alleged to be defective, it may be that other differences between the products, such as tire size, are 'immaterial.'"  *Id*. at *6 (citing *White v. Ford Motor Co.*, 312 F.3d 998, 1009 (9th Cir. 2002)).  The court also explained that because "[i]nformation necessary to determine whether products are similar will ordinarily be within the control of the manufacturer and/or designer," the discovery "rules cannot be read as imposing a 'Catch-22' that would require proof of similarity before a [plaintiff] may discover evidence of similarity."  *Id*. at *7.

In *Penney v. Ford Motor Company*, Case No. CV 94-0320-RAP-(SHx) (C. D. Cal. Nov. 22, 1994), the magistrate "reject[ed] the fundamental contention of General Tire that the GT52S tire ("subject tire") is so unique that plaintiffs should be wholly barred from discovery of possible similarities with other General Tire products."  *See* Exhibit P (Magistrate's Order).

### C.      Kumho's refusal to produce materials because they are alleged trade secrets is improper.

Kumho objected to the production of what appears to be substantial amounts of material because the material is allegedly a trade secret or highly confidential.  Because there is already a protective order in place to prevent dissemination of any materials produced, Kumho cannot pass the Tenth Circuit's test for resisting discovery of trade secrets or confidential information.

### 1.      Trade secrets are discoverable.

"'[T]here is no absolute privilege for trade secrets and similar confidential information.'" *Centurion Indus., Inc. v. Warren Steurer & Associates*, 665 F.2d 323, 325-26 (10th Cir. 1981) (quoting *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362, 99 S. Ct. 2800, 61 L. Ed. 2d 587 (1979)).  In other words, courts do not give "trade secrets automatic and complete immunity against disclosure."  *Merrill*, 443 U.S. at 362; *see AKH Co. v. Universal Underwriters Ins. Co.*, 300 F.R.D. 684, 692 (D. Kan. 2014) ("[T]his Court has held repeatedly [that] 'confidential' does not equate to 'nondiscoverable' or privileged.").  A court may issue a protective order requiring "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way" only if the moving party meets its "burden to demonstrate good cause."  *See* Fed. R. Civ. P. 26(c)(1)(G); *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 214 (D. Kan. 2002).

> A party seeking to resist disclosure under Rule 26(c)(7) [now (c)(1)(G)] *must first establish that the information sought is a trade secret or other confidential research, development, or commercial information and then demonstrate that its disclosure might be harmful*. *Centurion Indus.*, 665 F.2d at 325-26. If these requirements are met, the burden then shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action. *Id.* Finally, the court must balance the need of the party seeking discovery of the trade secrets and confidential information against the opposing party's claim of injury resulting from the disclosure. *Id.*

*MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 500 (D. Kan. 2007) (emphasis added);

*Sprint Commc'ns Co. L.P. v. Big River Tel. Co., LLC*, Case No. 08-2046-JWL, 2008 WL 4401690, at *2, 5 (D. Kan. Sept. 16, 2008) ("Due to an amendment effective December 1, 2007, the provision previously contained in Fed. R. Civ. P. 26(c)(7) is now contained in Fed. R. Civ. P. 26(c)(1)(G).").

"In determining whether there is good cause to issue a Rule 26(c) order . . . , the initial inquiry is whether the moving party has shown that disclosure of the information will result in a clearly defined and very serious injury." *Zapata v. IBP, Inc.*, 160 F.R.D. 625, 627 (D. Kan. 1995) (internal quotation omitted). "The moving party must also make 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Horizon Holdings*, 209 F.R.D. at 214 (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981)).

> **2.      Kumho cannot pass the Tenth Circuit's test for resisting discovery of its alleged trade secrets.**

The analysis in the *Sprint Commc'ns* case indicates that Kumho cannot possibly pass the Tenth Circuit's test for resisting discovery of trade secrets or confidential information. In that case, the magistrate found that although the defendant established that the information it sought to withhold from discovery constituted a trade secret, the defendant could not "meet the rest of its burden" to show that disclosure of that information to plaintiff's in-house counsel would "likely cause harm." 2008 WL 4401690, at *5.

In this case, even if this Court accepts Kumho's assertion that many of Plaintiffs' requests seek trade secrets, Kumho cannot meet the rest of its burden to show that disclosure of those trade secrets to Plaintiffs will likely cause harm. This Court has already entered a Protective Order in this case, which protects "Confidential Information" – which is defined as "trade secrets or other confidential research, development or proprietary business information

that is reasonably likely to lead to competitive injury if disclosed" – "from disclosure and use outside this litigation." *See* ECF Doc. 43, ¶ 2. Kumho cannot possibly show that disclosure to Plaintiffs "will result in a clearly defined and very serious injury" because Plaintiffs cannot share discovery documents with anyone that is not involved in this litigation, and those involved in this litigation with tire industry ties (*i.e.*, Plaintiffs' expert witnesses) must sign an agreement to be bound by the Protective Order. *See* ECF Doc. 43, ¶ 7. The likelihood of Kumho being harmed by the disclosure of trade secrets to Plaintiffs is slim to none.

Because the burden has not shifted to Plaintiffs, this Court need not address whether Plaintiffs have established that disclosure of Kumho's trade secrets is relevant and necessary to this action, nor must it balance Plaintiffs' need for disclosure against Kumho's claim of injury. But should this Court reach the second step of the analysis, the relevance and necessity of the discovery requests to which Kumho objected on trade secret grounds will be discussed below. If this Court reaches the third step of the analysis, disclosure is still proper because the likelihood of injury to Kumho is so slim that it does not outweigh Plaintiffs' need to discover Kumho's trade secrets, which are relevant to Plaintiffs' defect theories.

In *Petersen*, Cooper argued that the plaintiffs' discovery requests sought confidential trade secrets, which the plaintiffs had failed to demonstrate were relevant and necessary to their case. Without addressing the threshold issue of whether the requests sought trade secrets and disclosure would harm Cooper, the magistrate found that the plaintiffs had met their burden to show "the alleged trade secrets" were relevant and necessary due to their broad theory of the case. 2007 WL 2391151, at *3. More importantly, the magistrate went on to find that Cooper's trade secrets were "adequately protected against improper disclosure" considering the court had already adopted Cooper's proposed protective order. *Id*. The Tenth Circuit held that the

13

magistrate recognized the proper standard and did not err in finding the plaintiffs' need outweighed Cooper's harm and in ordering disclosure of Cooper's alleged trade secrets. *Cooper*, 568 F.3d at 1195.

The *Cooper* case instructs that in conducting the balancing test, this Court should take into account the fact that Kumho's proposed protective order is already in place and prevents any dissemination of Kumho's trade secrets outside of this litigation. Therefore, Kumho simply has not met its burden to show good cause for this Court to issue another protective order requiring that Kumho's trade secrets not be revealed *at all*.

### D.   Plaintiffs' requests and interrogatories seek relevant information and Kumho's mass objections are unsustainable.

In this case, Plaintiffs' requests and interrogatories cover approximately eleven topics relevant to their defect theories. In addition to inappropriately limiting Plaintiffs' discovery to information specific to tires of the same model and size as the subject tire, Kumho has lodged frivolous objections to most of Plaintiffs' requests. Plaintiffs' challenges to Kumho's discovery responses will be set forth below.

### 1.   The design and manufacture of the subject tire (Road Venture AT tire).

**Interrogatory No. 14:**   Identify and describe all the components of the SUBJECT TIRE.

**Request for Production No. 2:**   The green tire specifications, blueprints and drawings for the SUBJECT TIRE and all component parts that are assembled to make the SUBJECT TIRE.

**Request for Production No. 3:**   All documents and correspondence reflecting or discussing green tire specification changes (or discussing in any manner the reasons for such changes) for the SUBJECT TIRE and any component thereof.

**Request for Production No. 4:**   The cured tire specifications, blueprints and drawings for the SUBJECT TIRE and all component parts that are assembled to make the SUBJECT TIRE.

**Request for Production No. 5:**   All documents and correspondence reflecting or discussing cured tire specification changes (or discussing in any manner the reasons for such changes) for the SUBJECT TIRE and any component thereof.

**Request for Production No. 39:**   The documents which reflect, evidence or describe the manufacturing process the SUBJECT TIRE went through.

**Request for Production No. 51:**   The specifications, blueprints and drawings for the cap plies used on the SUBJECT TIRE.

In response to these requests and interrogatory, Kumho only produced the design drawings and manufacturing specifications for the subject tire (6 pages); the manufacturing specifications for the subject model and size tire (59 pages); the cut measure drawing and sheet for the subject model and size tire (2 pages); and the manufacturing standards and quality control plan for the plant that manufactured the subject tire (24 pages).  Kumho also explained that the subject model and size tire does not have a common green tire.  Kumho objected on the grounds of confidentiality and to the terms "all documents" and "all components."

Kumho refused to provide information regarding the components of the subject tire or the process by which it was manufactured.  Kumho has absolutely no right to block Plaintiffs' access to design and manufacturing information regarding the subject tire.

Moreover, Kumho's argument regarding Plaintiffs' use of the word "all" is misplaced.  Plaintiffs have met their duty to state their discovery requests with reasonable particularity.  *See Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008) (explaining that a discovery request should be written so as to apprise a person of ordinary intelligence what documents are required and enable the court to ascertain whether the requested documents have been produced).  Rather than asking Kumho for "all documents" relating or referring to the allegations in this case, Plaintiffs seek "all documents" relating to certain specific categories of information.  Such requests are not objectionable.  *See Audiotext Commc'ns. v. U.S. Telecom, Inc.*, Case No. 94-2395-GTV, 1995 WL 18759, at *1 (D. Kan. Jan. 17, 1995); *Brown v. University of Kansas*, Case No. 10-2606-EFM-KGG, 2012 WL 368715, at *4-5 (D. Kan. Feb. 3, 2012).  Plaintiffs would like to draw this Court's attention to the fact that Kumho lodged this

unsustainable objection to many of Plaintiffs' requests.  Plaintiffs reassert their argument in each of those instances.  *See Ehrlich v. Union Pacific R. Co.*, Case No. 13-2142-JTM-TJJ, 2014 WL 5089407, at *3 (D. Kan. Oct. 9, 2014) (party filing motion to compel need not substantively address each and every objection asserted by the party resisting discovery).

Lastly, as the party objecting to discovery, Kumho has the burden to show that Plaintiffs' use of the term "component" is vague or ambiguous.  *See Williams v. Bd of County Comm'rs*, 192 F.R.D. 698, 705 (D. Kan. 2000).  A party responding to discovery requests "should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized." *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 655 (D. Kan. 2006).  Considering it is in the business of manufacturing tires, Kumho's claim that it does not know what Plaintiffs mean by the term "component" is laughable.  Moreover, Plaintiffs clarified in their Golden Rule Email that the term includes, but is not limited to, a tread, steel belt, inner liner, belt wedge, nylon cap ply, body ply, and bead.

     **2.**    **The design and manufacture of substantially similar tires (Road Venture AT tires of all sizes, Road Venture APT tires, Road Venture MT tires, and other Kumho passenger and light truck tires with the same inner liner halobutyl content or skim stock formulation as the subject tire).**

**Request for Production Nos. 6, 10, 14:**    The green tire specifications, blueprints and drawings for the [SUBJECT LINE / SUBJECT MODEL / SIMILAR] TIRES and all component parts that are assembled to make the [SUBJECT LINE / SUBJECT MODEL / SIMILAR] TIRES.

**Request for Production Nos. 7, 11, 15:**    All documents and correspondence reflecting or discussing green tire specification changes (or discussing in any manner the reasons for such changes) for the [SUBJECT LINE / SUBJECT MODEL / SIMILAR] TIRES and any component thereof.

**Request for Production Nos. 8, 12, 16:**    The cured tire specifications, blueprints and drawings for the [SUBJECT LINE / SUBJECT MODEL / SIMILAR] TIRES and all component parts that are assembled to make the [SUBJECT LINE / SUBJECT MODEL / SIMILAR] TIRES.

**Request for Production Nos. 9, 13, 17:**    All documents and correspondence reflecting or discussing cured tire specification changes (or discussing in any manner the reasons for such changes) for the [SUBJECT LINE / SUBJECT MODEL / SIMILAR] TIRES and any component thereof.

**Request for Production Nos. 40, 41, 42:**   All documents and correspondence which reflect, discuss or mention any changes to the manufacturing process throughout the life of [a SUBJECT LINE / SUBJECT MODEL / SIMILAR] TIRE line.

**Request for Production Nos. 43, 44, 45:**   All documents and correspondence which reflect, discuss or mention any changes to the design of the [SUBJECT LINE / SUBJECT MODEL / SIMILAR] TIRE line throughout its life.

**Interrogatory No. 9:**      With respect to SUBJECT LINE TIRES:

     a.    State the first (and if no longer being built, the last) date of manufacture;

     b.    List all tire sizes, styles and load ranges of these tires throughout the life of this tire line;

     c.    Identify all plants where these tires have ever been manufactured;

     d.    Identify any changes in the manufacturing process throughout the life of this tire line; and

     e.    Identify any changes in the design of these tires throughout the life of this tire line.

**Interrogatory No. 16:**     Identify any manufacturing or design defects you have found in any SUBJECT LINE TIRE, any SUBJECT MODEL TIRE or any SIMILAR TIRE.

Kumho provided no materials in response to these requests and limited its interrogatory answers to the subject model and size tire.  Kumho stated that the subject model and size tire is manufactured at its Binh Duong (Vietnam), Kwangju (Republic of Korea), and Nanjing (China) plants, and there has been no change to the manufacturing process for those tires.  Kumho objected to these requests and interrogatories on the grounds of scope (not substantially similar tires) and to the phrases "any changes to the manufacturing process" and "any changes to the design" throughout the life of a tire line.  Additionally, Kumho objected to Request Nos. 6-17 on confidentiality grounds and to Request Nos. 40-45 on trade secret grounds.

It is critical that this Court allow Plaintiffs to discover information regarding the design and manufacture of substantially similar tires.  This information could indicate the existence of common defects in tires with the same components as the subject tire, and could also reveal key differences in similar tires that would constitute a safer alternative design.

Furthermore, Kumho cannot meet its burden to show that Plaintiffs' use of the phrases "changes to the manufacturing process" and "any changes to the design" is vague and

ambiguous.  *See Williams*, 192 F.R.D. at 705.  In responding to Plaintiffs' discovery requests, Kumho was required to exercise reason and common sense to attribute ordinary definitions to the terms used.  *See Johnson*, 238 F.R.D. at 655.  Considering its position as a tire designer and manufacturer, Kumho simply cannot claim that it is unaware of the meaning of the disputed phrases.

### 3.  Loss adjustment data, warranty claims and exchanges of substantially similar tires.

**Request for Production Nos. 18, 19, 20:**   All loss adjustment data and warranty claims for all [SUBJECT LINE / SUBJECT MODEL / SIMILAR] TIRES.

**Request for Production No. 78:**  All documents and correspondence reflecting or discussing any recall, customer satisfaction initiative or any program or policy by any name whatsoever that involved your agreement to exchange at no cost or a reduced cost any SUBJECT LINE TIRE, SUBJECT MODEL TIRE or SIMILAR TIRE for a new or different tire.

In response to these requests, Kumho produced warranty adjustment data for tread separations of the subject model and size tire (6 pages) and documents regarding a voluntary recall of subject model and size tires manufactured at its China plant in 2005 (30 pages).  Kumho objected on grounds of scope and confidentiality.  Kumho asserted a boilerplate objection to Request No. 78 and further objected because it is not limited to Plaintiffs' defect theories and it requires Kumho to marshal the evidence.

An "adjustment" occurs when any Kumho tire fails during its warranty period.  If the failure occurs during the first 2/32" of *original* tread use, Kumho will replace the tire free of charge; if it occurs after that, Kumho will provide a credit (based on the percentage of useable tread remaining) toward the purchase of a new tire.  *See* Exhibit Q (Excerpt from Kumho's tire warranty).  Tire manufacturers keep detailed adjustment records, noting the specific type of failure for each adjusted tire.

Adjustment data is critical because it will allow Plaintiffs to identify defect trends in tires as well as the effectiveness of tires with different designs than the subject tire.  For example, if

the adjustment data shows that all tires with a certain skim stock formula or inner liner composition are failing but tires with a different formula or composition are not, then Plaintiffs will have identified the problem.   Therefore, Plaintiffs must be given access to complete adjustment data for the subject tire and substantially similar tires.   The court in *Satterwhite v. Continental Tire North America, Inc.*, Case No. 03-CA-6253/Div. 33 (Fla. Cir. Ct. 2006), found that all tires made with the same skim stock were "substantially similar" for discovery purposes and ordered the defendant to produce all adjustment data for those tires, regardless of failure mode.  *See* Exhibit R (Court's Order).

Moreover, courts in this jurisdiction look "with disfavor on conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad."  *Gheesling v. Chater*, 162 F.R.D. 649, 650 (D. Kan. 1995).  Such boilerplate objections, standing alone, do not constitute a successful objection to a discovery request.  *Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 518-19 (D. Kan. 2010).  As the objecting party, Kumho has the burden to "show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each question is" objectionable.  *See Stonebarger v. Union Pacific Corp.*, Case No. 13-cv-2137-JAR-TJJ, 2014 WL 3579374, at *3 (D. Kan. July 21, 2014).  Kumho has merely provide a laundry list of objections and then wholly failed to provide even the slightest explanation as to why it finds Plaintiffs' discovery requests to be overly broad, unduly burdensome, irrelevant, *etc*.  *See Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, Case No. 13-2150-CM-KGG, 2014 WL 4386147, at *2-3 (D. Kan. Sept. 5, 2014).  Plaintiffs would like to draw this Court's attention to the fact that Kumho lodged this unsustainable objection to many of Plaintiffs' requests.  Plaintiffs reassert their argument in each of those instances.  *See Ehrlich*, 2014 WL 5089407, at *3.

Lastly, Kumho's argument that this request requires Kumho to marshal the evidence is rare and misplaced.  The duty to marshal evidence is present during substantive proceedings, like trials or summary judgment hearings, and requires a party to direct the court to the places in the record where evidence exists to support their positions.  *See RMD, LLC v. Nitto Americas, Inc.*, Case No. 09-2056-JAR, 2012 WL 1033542, at *7-8 (D. Kan. Mar. 27, 2012); *Firestone v. Hawker Beechcraft Intern. Service Co.*, Case No. 10-1404-JWL, 2012 WL 683286, at *11 (D. Kan. Mar. 2, 2012).  Plaintiffs agree that a parallel can be drawn between a party's duty to direct the court to evidence and a discovery proponent's duty to state requests with reasonable particularity so as to direct the receiving party to the information sought.  In *Grynberg v. Total S.A.*, Case No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *5-7 (D. Colo. May 3, 2006), a defendant successfully lodged a marshal-the-evidence objection to a plaintiff's overly broad and unduly burdensome contention interrogatory that sought all material facts and documents upon which defendant's defenses were based.  This case is not like *Grynberg* because Plaintiffs directed Kumho to specific categories of information relevant to their defect theories.  Plaintiffs would like to draw this Court's attention to the fact that Kumho lodged this unsustainable objection to several of Plaintiffs' requests.  Plaintiffs reassert their argument in each of those instances.  *See Ehrlich*, 2014 WL 5089407, at *3.

### 4. Plants that manufacture the subject tire and substantially similar tires.

**Interrogatory Nos. 5, 6:**  Please state the number of [SUBJECT LINE / SUBJECT MODEL] TIRES produced on a weekly and monthly basis at each Kumho plant during the twelve months preceding the date on which the SUBJECT TIRE was manufactured.

**Request for Production Nos. 29, 30:**     The documents which reflect the number of [SUBJECT LINE / SUBJECT MODEL] TIRES produced on a weekly and/or monthly basis at each Kumho plant during the twelve months preceding the date on which the SUBJECT TIRE was manufactured.

**Interrogatory No. 7:**      Please state the number of tires produced on a weekly and monthly basis at the Kumho plant where the SUBJECT TIRE was manufactured during the twelve months preceding the date on which the SUBJECT TIRE was manufactured.

**Request for Production No. 32:**   Documents which reflect the number of tires produced on a weekly and/or monthly basis at the Kumho plant where the SUBJECT TIRE was manufactured during the twelve months preceding the date on which the SUBJECT TIRE was manufactured.

**Request for Production No. 110:** All documents and correspondence that contain, mention, discuss, relate to, and/or depict the number and length of work shifts used during a daily and/or weekly time period at the plant where the SUBJECT TIRE was built for the one year prior to the SUBJECT TIRE being built through the one year following the SUBJECT TIRE being built.

**Request for Production No. 111:** All documents and correspondence that contain, mention, discuss, relate to and/or depict labor shortages and/or labor relations issues (such as strikes, complaints as to working conditions, complaints as to manufacturing processes or procedures and/or quality control) at the plant where the SUBJECT TIRE was made for the two years prior to the SUBJECT TIRE being built through the two years following the SUBJECT TIRE being built.

**Request for Production No. 112:** All documents that show, mention, discuss, relate to, and/or depict how many different lines of tires were and/or may be made simultaneously at the plant where the SUBJECT TIRE was made for the two years prior to the SUBJECT TIRE being built through the two years following the SUBJECT TIRE being built.

**Request for Production No. 116:** For the tire manufacturing plant where the SUBJECT TIRE was built, please produce all inspection reports and documents for the period beginning one year prior to the date of manufacture of the SUBJECT TIRE and ending one year after the date of manufacture of the SUBJECT TIRE.

In response to these requests and interrogatories, Kumho stated that the subject tire was manufactured at its Vietnam plant in August 2008 and manufacture of the subject model and size tire began at its Vietnam plant in July 2008, at its Korea plant in May 2005, and at its China plant in January 2005.  Kumho produced the monthly production record for the subject model and size tire at each of those plants (3 pages).  Kumho also produced the tire builder work shifts in place from July 2008 to August 2009 at the subject plant.  Finally, Kumho produced the incoming inspection process and finished product inspection standards for the subject plant (53 pages).  Kumho objected to these requests and interrogatories on grounds of scope.  Kumho also objected to Interrogatory Nos. 5-7 on confidentiality grounds and to Request Nos. 29-30, 32 and 110-12 on trade secret grounds.  Kumho further objected to Request Nos. 110-12 on grounds that they are not limited to Plaintiffs' theories of defect.

Kumho refused to provide the monthly production record for substantially similar tires at each Kumho plant or the monthly production record for all tires at the subject plant. Kumho also refused to provide any actual inspection reports for the subject plant. Plaintiffs are entitled to this information because they have alleged that the subject tire contained one or more manufacturing defects, which are directly related to plant conditions and work environment. Whether the subject plant often fails inspections and whether its labor force is overworked is clearly relevant to Plaintiffs' manufacturing defect theories.

### 5. The inner liner and skim stock of the subject tire and substantially similar tires.

**Interrogatory No. 11:** Identify the tires designed, manufactured or sold by you which contain the same amount of halobutyl (whether in percentage or total content) in the inner liner as the SUBJECT TIRE.

**Request for Production No. 21:** Any documents, correspondence or files which show, list or identify which tires have the same amount of halobutyl (by percentage or content) in the inner liner as the SUBJECT TIRE.

**Interrogatory No. 12:** Identify the tires designed, manufactured or sold by you which utilize the same skim stock formulation as the SUBJECT TIRE.

**Request for Production No. 22:** All documents, correspondence or files which show, list or identify which tires utilize the same skim stock formulation as the SUBJECT TIRE.

**Interrogatory No. 10:** Please state the amount of halobutyl, in percentage and total content, in the inner liner of the SUBJECT TIRE.

**Request for Production No. 46:** All documents and correspondence which reflect or discuss the halobutyl content (whether in percentage or total content) of the inner liner of the SUBJECT TIRE and/or SUBJECT LINE TIRES.

**Request for Production No. 57:** The documents that reflect the thickness of the inner liner of the SUBJECT TIRE.

**Request for Production No. 58:** The documents that reflect the formulation of the inner liner of the SUBJECT TIRE.

In response to these requests and interrogatories, Kumho referred Plaintiffs to the manufacturing specifications for the subject tire and the cut measure drawing and sheet for the subject model and size tire. Kumho objected on scope and trade secret grounds.

The subject tire's skim stock formula, inner liner halobutyl content, and inner liner thickness are directly at issue in this case. Not only must Plaintiffs be permitted to discover the details regarding their defect theories, but they must be permitted to discover whether those defects are present in other Kumho tires. In *Reyes v. Cooper Tire & Rubber Co.*, the magistrate ordered the defendant to produce, pursuant to the protective order that had been entered in the case, the skim stock formula and the inner liner composition for the subject tire. Case No. 09-3680-SRD-SS, 2010 WL 9073201, at *12 (E. D. La. June 23, 2010) (discovery was limited to tires with the same green tire specification because "plaintiffs [did] not tailor their discovery to the design claim which they [we]re asserting").

### 6. Kumho's knowledge of competitor tire components.

**Request for Production No. 95:** All documents and correspondence that concern, mention, discuss, relate to and/or depict the reverse engineering and analysis of competitor tires to the SUBJECT LINE TIRES or SUBJECT MODEL TIRES (please note that "reverse engineering" in this request *refers* to cutting or otherwise tearing apart, and/or chemically analyzing, a cured tire from a competitor to determine its components, how it was assembled, and/or what its components *are* made of).

Kumho provided no materials in response to this request. Kumho objected on scope and trade secret grounds. Kumho also objected on grounds that the request is not limited to Plaintiffs' theories of defect and seeks premature disclosure of Kumho's experts.

Plaintiffs are entitled to this information because whether Kumho was aware of safer alternative designs or manufacturing techniques for the subject tire is highly relevant to the issues in this case.

Moreover, Kumho's argument that this request seeks premature disclosure of its experts and their materials lacks merit. Plaintiffs seek to discover Kumho's knowledge of a topic relevant to their defect theories. Therefore, production of the requested materials obviously does not require input from Kumho's experts. *See In re Urethane Antitrust Litigation*, Case No. 04-MD-1616-JWL, 2009 WL 2058759, at *2 (D. Kan. July 15, 2009). Even if expert consultation is

somehow required, it does "not transform permissible factual discovery into 'expert discovery.'"
*See Geer v. Cox*, Case No. 01-2583-JAR, 2003 WL 21254731, at \*3 (D. Kan. May 21, 2003).
Kumho has a duty to respond to the request with the information it possesses and may later
supplement its responses under Fed. R. Civ. P. 26(e).  *See id.*; *Bohannon v. Honda Motor Co.*,
127 F.R.D. 536, 538 (D. Kan. 1989).  Kumho is not entitled to withhold discovery on this issue
until it has obtained expert advice.  *See Bohannon,* 127 F.R.D. at 538.  Plaintiffs would like to
draw this Court's attention to the fact that Kumho lodged this unsustainable objection to several
of Plaintiffs' requests.  Plaintiffs reassert their argument in each of those instances.  *See Ehrlich*,
2014 WL 5089407, at \*3.

### 7.  Testing applicable to the subject tire and substantially similar tires.

**Request for Production Nos. 59, 60, 61:**  All developmental and certification testing of the
SUBJECT TIRE and [SUBJECT LINE / SUBJECT MODEL / SIMILAR] TIRES.

**Request for Production No. 66:**  All internal Kumho tire design manuals, standards, guidelines
or other internal documents setting forth guidelines or recommendations for tire design, testing
and/or manufacture.

**Request for Production No. 67:**  All internal Kumho testing manuals or testing requirements
applicable to tires in general and also to the SUBJECT TIRE.

**Request for Production No. 85:**  All reports, photographs, computer analysis, simulations or
videotapes of any tests performed by you (or by someone on your behalf) on the SUBJECT LINE
TIRES, SUBJECT MODEL TIRES or SIMILAR TIRES to determine vehicle handling
characteristics or stability when a tire fails by way of a TREAD SEPARATION.

In response to these requests, Kumho produced adhesion and endurance test reports for
the subject tire (5 pages) and a product development completion report (33 pages), adhesion test
reports (2 pages), endurance test reports (20 pages), plunger test reports (3 pages), an air loss test
report (1 page), and a cut measure sheet (1 page) for the subject model and size tire.  Kumho
objected on scope and trade secret grounds.  Kumho objected to Request Nos. 66-67 and 85 on
grounds that they are not limited to Plaintiffs' theories of defect.  Kumho further objected to
Request Nos. 66-67 because they are not limited to a certain time period.

Any testing conducted on the subject tire or substantially similar tires, regardless of time period, is important information in light of Plaintiffs' defect theories. The manner in which the tires performed during testing as well as the methods Kumho used to test them needs to be reviewed by Plaintiffs. Additionally, one of Kumho's defenses will likely be that the subject tire was not defective because it was tested in accordance with internal guidelines. Therefore, it is vital to Plaintiffs' case that Kumho's objections be stricken and all testing be produced.

### 8.    Incidents of tread separation in substantially similar tires.

**Interrogatory No. 8.**    Please identify any claims, complaints, notices and lawsuits you are aware of arising from an incident where it was alleged that a TREAD SEPARATION of a SUBJECT LINE TIRE, a SUBJECT MODEL TIRE or a SIMILAR TIRE which occurred from September 13, 2001 through September 12, 2011 caused or contributed to cause injury or death.

**Request for Production Nos. 33, 34, 35:**    All documents and correspondence relating to any claim, complaint, notice or lawsuit you received or were made aware of arising from an incident where it was alleged that a TREAD SEPARATION of a [SUBJECT LINE / SUBJECT MODEL / SIMILAR] TIRE which occurred from September 13, 2001 through September 12, 2011 caused or contributed to cause injury or death.

**Request for Production No. 36:**    The depositions (and exhibits thereto) of any Kumho corporate representative or employee given in a case in which it was alleged that there was a TREAD SEPARATION of a SUBJECT LINE TIRE, a SUBJECT MODEL TIRE or a SIMILAR TIRE.

**Request for Production No. 37:**    All Kumho corporate representative depositions given in the last ten years in any case in which it was alleged that there was a TREAD SEPARATION of any Kumho tire.

**Request for Production No. 38:**    The initial pleading or lawsuit from any case in which it was alleged that there was a TREAD SEPARATION of a SUBJECT LINE TIRE, a SUBJECT MODEL TIRE or a SIMILAR TIRE.

Kumho produced no documents in response to these requests. Kumho stated that it is not aware of any claims or lawsuits, other than this one, involving a tread separation of a subject model and size tire that caused injury or death. Kumho also stated that no Kumho corporate representative or employee has given deposition testimony regarding the subject model and size tire. Kumho objected based on scope. Kumho also objected to Request Nos. 33-35 on grounds

that they invade the reasonable expectation of privacy of Kumho's complaining customers and to Request Nos. 36-37 on trade secret or confidentiality grounds.

Plaintiffs are entitled to discover whether there have been any incidents of tread separation not only in the subject model and size tire but also in tires that are substantially similar to the subject tire. Plaintiffs have sufficiently narrowed the scope of their discovery to a ten-year period. Just like adjustment data, these other tread separation incidents will allow Plaintiffs to identify defect trends in tires. Moreover, testimony of Kumho corporate representatives or employees on the same issues that form the basis for this lawsuit, regardless of the type of tire involved, would provide relevant evidence of what Kumho knew about foreseeability and danger as well as its capability for adequately testing and warning about tread separation.

Moreover, Kumho's objection that its customers have a privacy right regarding their tire complaints has been rejected in this jurisdiction. *See Cory v. Aztec Steel Bldg., Inc.*, 225 F.R.D. 667, 677 (D. Kan. 2005). Concern about the disclosure of private or sensitive information, standing alone, is not a sufficient basis to withhold discovery and is best addressed in the form of a protective order. *In re Bank of America Wage and Hour Employment Practices Litigation*, 275 F.R.D. 534, 541 (D. Kan. 2011). Furthermore, it is Plaintiffs' position that their interest in discovering information about the tire defects that caused their son's death and Megan McKellips' injuries outweighs the privacy interests of Kumho's customers. It can also be argued that the customers who filed lawsuits waived their privacy rights. Plaintiffs would like to draw this Court's attention to the fact that Kumho lodged this unsustainable objection to several of Plaintiffs' requests. Plaintiffs reassert their argument in each of those instances. *See Ehrlich*, 2014 WL 5089407, at *3.

### 9.     Kumho's knowledge of inner liner and skim stock issues.

**Request for Production No. 47:**   All documents and correspondence which reflect or discuss the use of halobutyl in tire inner liners.

**Request for Production No. 48:**   All documents and correspondence which reflect or discuss the reasons for, advantages of or disadvantages of using halobutyl (and/or different amounts thereof) in tire inner liners.

**Request for Production No. 62:**   Any documents and correspondence regarding or discussing oxygen degradation, oxidation and/or how the thickness or formulation of the inner liner affects oxidative aging of tire rubber.

**Request for Production No. 90:**   All documents and correspondence that concern, mention, discuss, relate to and/or depict the purpose for using antioxidants and/or antiozinants in the skim stock used in the SUBJECT LINE TIRES.

**Request for Production No. 91:**   All documents and correspondence that concern, mention, discuss, relate to and/or depict changes made in the amount or formulation of antioxidants and/or antiozinants used in the skim stock of the SUBJECT LINE TIRES.

**Request for Production No. 96:**   All documents and correspondence that concern, mention, discuss, relate to and/or depict the permeability, by design, of the inner liner of the SUBJECT TIRE.

**Request for Production No. 97:**   All documents and correspondence that concern, mention, discuss, relate to and/or depict the actual (or measured) permeability of the inner liner of the SUBJECT TIRE.

**Request for Production No. 98:**   All documents and correspondence that concern, mention, discuss, relate to and/or depict comparisons between the permeability of the inner liner of the SUBJECT TIRE and other tires.

**Request for Production No. 99:**   All documents and correspondence that concern, mention, discuss, relate to and/or depict how much air may pass through an inner liner and/or where the air goes once it passes through the inner liner.

In response to these requests, Kumho referred Plaintiffs to the air loss test report for the subject model and size tire (1 page).  Kumho stated that it has no documents that compare the air loss rate of the subject tire to those of competitor tires.  Kumho objected on scope and trade secret grounds.  Kumho objected to Request Nos. 47-48, 62, 90 and 99 on grounds that the information exists in the public domain and is equally accessible to Plaintiffs.  Kumho also objected to Request Nos. 62, 90 and 99 because they are not limited to Plaintiffs' theories of defect.  Kumho further objected to Request Nos. 62 and 90 because they are not limited to a certain time.

Kumho's attempt to limit these requests to documents regarding the subject model and size tire is ridiculous.  These requests relate to topics of general discussion at a tire company.  Such topics would not be addressed on a tire by tire basis.  The requested documents would reflect Kumho's knowledge of potential safety issues regarding inner liners with low halobutyl content and skim stock with inappropriate levels of antioxidants and/or antiozinants.  Therefore, this information is clearly relevant to Plaintiffs' claims.

Moreover, Kumho's argument that the requested documents exist in the public domain and are equally available to Plaintiffs wholly misses the mark.  Plaintiffs' discovery requests seek Kumho's knowledge of inner liner and skim stock issues, not the knowledge of the world at large.  Kumho's notice of issues that may have led to the defect in the subject tire is clearly relevant to this litigation.  Therefore, Kumho's objection is unsustainable.  Alternatively, an equal accessibility objection, standing alone, is insufficient to resist a discovery request.  *See Associated Wholesale Grocers, Inc. v. U.S.*, Case No. 86-2261-0, 1989 WL 110300, at *3 (D. Kan. June 7, 1989); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, Case No. 05-2164-MLB-DWB, 2007 WL 2192860, at *1 (D. Kan. July 25, 2007).  Plaintiffs would like to draw this Court's attention to the fact that Kumho lodged this unsustainable objection to several of Plaintiffs' requests.  Plaintiffs reassert their argument in each of those instances.  *See Ehrlich*, 2014 WL 5089407, at *3.

### 10.  Kumho's knowledge of tread separation issues.

**Request for Production No. 63:**  All documents and correspondence identifying, regarding and/or discussing the various causes of TREAD SEPARATIONS and/or design features or countermeasures that can be used to minimize or reduce the incidence and/ or magnitude of TREAD SEPARATION.

**Request for Production No. 68:**  All documents and correspondence which reflect, evidence or discuss studies, reports, testing or research to determine the causes of TREAD SEPARATION in tires in general.

**Request for Production No. 69:**   All documents and correspondence which reflect, evidence or discuss studies, reports, testing or research to determine the causes of TREAD SEPARATION in the SUBJECT LINE TIRES, SUBJECT MODEL TIRES or SIMILAR TIRES.

**Request for Production No. 70:**   All correspondence on the subject of or discussing TREAD SEPARATION between you and the US. Department of Transportation, NHTSA or any other foreign or domestic governmental entity.

**Request for Production No. 71:**   All correspondence on the subject of or discussing TREAD SEPARATION between you and any automobile manufacturer.

**Request for Production No. 79:**   All documents and correspondence relating to or discussing any U.S. Department of Transportation or NHTSA investigation or inquiry (by whatever name called) into the subject of TREAD SEPARATION in your tires.

**Request for Production No. 84:**   All management, engineering or marketing meeting minutes, memoranda or other business records referring to or discussing the issue of TREAD SEPARATION in steel belted radial passenger and light truck tires.

**Request for Production No. 86:**   All documents and correspondence that concern, mention, discuss, relate to and/ or depict reasonable and/or foreseeable driver responses to TREAD SEPARATION incidents.

**Request for Production No. 87:**   All documents and correspondence that concern, mention, discuss, relate to and/or depict the forces and/or handling effects imparted to a vehicle as a result of a TREAD SEPARATION.

**Request for Production No. 88:**   All documents and correspondence that concern, mention, discuss, relate to and/or depict the hazards and/or risks associated with a TREAD SEPARATION.

**Request for Production No. 89:**   All documents and correspondence that concern, mention, discuss, relate to and/or depict the causes of TREAD SEPARATION in steel belted radial tires.

In response to these requests, Kumho referred Plaintiffs to the test reports it produced for the subject tire (adhesion and endurance) and for the subject model and size tire (product development completion, adhesion, endurance, plunger, air loss) as well as the cut measure sheet for the subject model and size tire.  Kumho stated that it has no correspondence (internal or with governmental entity or automobile manufacturer) regarding tread separation of subject model and size tires manufactured at the subject plant, and it has no documents regarding any governmental investigation into that subject.  Kumho objected on grounds of scope and because the requests are not limited to Plaintiffs' theories of defect.  Kumho also objected to Request Nos. 63, 68, 69 and 86-89 on trade secret grounds and to Request Nos. 70-71, 79 and 84 on

confidentiality grounds.  Kumho further objected to Request Nos. 63, 68-71 and 89 because they are not limited to a certain time.

Again, Kumho's attempt to limit these requests to documents regarding the subject model and size tire is improper.  These requests relate to topics of general discussion at a tire company. Such topics would not be addressed on a tire by tire basis.  The requested documents would reflect Kumho's knowledge of the danger and the need to minimize the tread separation potential of its tires.

### 11.    Cost and profitability of the subject tire and substantially similar tires.

**Request for Production No. 117:**  All documents and correspondence regarding, reflecting or discussing any cost cutting or cost reducing measures taken any time during the design, development and manufacture of the SUBJECT LINE TIRES and SUBJECT MODEL TIRES.

**Request for Production No. 119:**  All documents and correspondence regarding the profit you made on the sale of the SUBJECT TIRE and SUBJECT LINE TIRES.

**Request for Production No. 120:**  All documents and correspondence regarding, reflecting or discussing the profitability of the SUBJECT LINE TIRES as compared to any other tire.

Kumho produced no documents in response to these requests.  Kumho stated that the general "cost" associated with tire production has only increased.  Kumho objected on scope and trade secret grounds.  Kumho also objected to the phrase "cost cutting or cost reducing measures."  Kumho further objected on grounds that the requests are not limited to Plaintiffs' theories of defect.

There is no colorable argument to be made that any cost-related changes Kumho made regarding the design and manufacture of the subject tire and substantially similar tires are not relevant to Plaintiffs' theory of the case.  Plaintiffs have an obvious interest in discovering whether Kumho put profit ahead of tire safety.

Moreover, Kumho cannot meet its burden to show that Plaintiffs' use of the term "cost cutting or cost reducing measures" is vague and ambiguous.  *See Williams*, 192 F.R.D. at 705.  In

responding to Plaintiffs' discovery request, Kumho was required to exercise reason and common sense to attribute ordinary definitions to the terms used.  *See Johnson*, 238 F.R.D. at 655. Kumho cannot claim that it is unaware of the meaning of the term "cost" in the tire manufacturing context.  Plaintiffs even clarified in their Golden Rule Email that the term includes, but is not limited to, labor and materials.

WHEREFORE, Plaintiffs respectfully request an Order striking Defendant Kumho's objections and compelling Kumho to provide complete and proper responses to Plaintiffs' First Request for Production and Interrogatories within ten (10) days of this Court's Order, as well as for such other and further relief as this Court deems just and proper.

Respectfully submitted,

**KUHLMAN & LUCAS, LLC**

By:  /s/ Lara M. Guscott
Chad C. Lucas              # 20549
Lara M. Guscott           # 24967
1100 Main Street, Suite 2550
Kansas City, Missouri 64105
Telephone:  (816) 799-0330
Facsimile:  (816) 799-0336
chad@kuhlmanlucas.com
lara@kuhlmanlucas.com
**Attorneys for Plaintiffs**


## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of November, 2014, I electronically filed Plaintiffs' Motion to Compel Discovery with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Lara M. Guscott
**Attorney for Plaintiffs**