IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MEGAN AND JACOB McKELLIPS, | ) | |
| Individually and as Co-Personal | ) | |
| Representatives of the Estate of Wesley | ) | |
| Jacob McKellips, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 13-cv-2393-JTM-TJJ |
| | ) | |
| KUMHO TIRE CO., INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This product liability case is before the Court on Plaintiffs' Motion to Compel Discovery (ECF No. 65). Plaintiffs request an order, pursuant to Fed. R. Civ. P. 37(a)(1), overruling Defendant Kumho's objections and compelling Kumho to answer Plaintiffs' First Interrogatories and produce documents responsive to Plaintiffs' First Request for Production. As explained below, the motion is granted in part and denied in part.

**I.     RELEVANT FACTS**

Plaintiffs allege that on September 12, 2011, in Miami County, Kansas, Plaintiff Megan McKellips, who was 32 weeks pregnant, was riding in a 2001 Ford F-250 pickup truck driven by Jennifer Heisman. Plaintiffs allege that Heisman lost control of the truck when its right front tire suffered a sudden, unexpected, and catastrophic tread and belt separation. The truck left the roadway and rolled over, ejecting Ms. McKellips. She sustained life-threatening injuries and underwent an emergency Caesarean section delivery of her son, who died three hours later. The tire that allegedly separated and caused the accident was a Kumho Road Venture All Terrain ("AT") tire KL78, size LT235/85R16, DOT K2ORYD4A3508, manufactured by Kumho Tire

(Vietnam) Co., Ltd. at its Binh Duong plant in Vietnam, during the 35th week of 2008 (hereinafter referred to as the "Subject Tire").

Plaintiffs commenced this action on August 7, 2013, claiming that Defendants defectively designed and manufactured the Subject Tire.  In their First Amended Complaint, Plaintiffs allege that the Subject Tire was defective in that it "lack[ed] proper adhesion between the steel belts, and/or between the steel belts and the surrounding materials."[1] Plaintiffs further allege that Defendants' negligence in connection with the Subject Tire consisted of:

> (a) Inadequate and/or improper belting; (b) Failure to design and manufacture the tire to account for the effects of ozone, oxygen and/or moisture; (c) Using inadequate and improper specifications and formulas; (d) Inadequate consideration of the ambient temperatures to which the tire would be subjected in ordinary road operation in the Midwestern United States; (e) Designing the tire with an inadequate margin of safety to prevent tread and belt separations in ordinary road operations or under expected and anticipated road conditions; (f) Inadequate sizing or compounding of the belt wedges and/or insulation strips; (g) Excessive use of fillers or other ingredients in inner liner compound(s) and/or the use of an inappropriate inner liner compound(s); and (h) Utilization of improper compounds for, or ingredients in, the ply rubber stocks, belt rubber stocks and tread base rubber stocks to achieve a cost savings at the expense of adequate adhesion of tire components.[2]

Before the parties began serving their discovery requests, they proposed an agreed upon protective order limiting the disclosure and use of confidential information, but they disagreed on the inclusion of a sharing provision.  After a hearing, the Court denied Plaintiffs' request for a sharing provision, finding it a preemptive sharing provision that would essentially allow discovery of Defendants' designated confidential information by as-yet unnamed plaintiffs or

---

[1] First Am. Compl. (ECF No. 14) at 6.

[2] *Id.* at 7.

potential plaintiffs in other litigation without any court supervision, and without any opportunity for Defendants to object to the disclosure.[3]  The provision as proposed also would have given Plaintiffs' counsel the sole discretion to determine who met the criteria for disclosure.  On July 22, 2014, the parties submitted and the Court entered a Protective Order (ECF No. 43) without any sharing provision.

On June 26, 2014, Plaintiffs served their First Request for Production and First Interrogatories upon Defendant Kumho Tire Co., Inc. ("Kumho"), consisting of 120 requests for production of documents and 16 interrogatories.  On September 5, 2014, Kumho served its Responses and Objections to Plaintiff's First Request for Production (111 pages), and its Answers and Objections to Plaintiffs' First Interrogatories (13 pages).  Kumho also produced nearly 500 documents responsive to these discovery requests (149 of which are English translations), but objected to nearly every request.  Kumho unilaterally limited the scope of its discovery responses and limited its production to responsive information that it identified as pertaining to "the Subject Tire and the subject model and size tire."[4]

On September 23, 2014, Plaintiffs' counsel sent a five-page "Golden Rule" email to Kumho's counsel pursuant to D. Kan. Rule 37.2, identifying and attempting to resolve what Plaintiffs believed to be deficiencies in Kumho's responses to Plaintiffs' discovery requests. Kumho responded to that email on October 6, 2014.  Plaintiffs thereafter made further attempts to confer as required by Fed. R. Civ. P. 37(a) and D. Kan. Rule 37.2, and ultimately filed their

---

[3] *See* Court's July 17, 2014 Order (ECF No. 42).

[4] Kumho's Resp. (ECF No. 68) at 6.

3

Motion to Compel Discovery on November 14, 2014.  Kumho filed its Response (ECF No. 68) on December 12, 2014, and Plaintiffs filed their Reply (ECF No. 71) on January 9, 2015.

The Court held a non-evidentiary motion hearing on February 17, 2015 to address issues related to Plaintiffs' Motion to Compel Discovery.  Among the issues discussed at length during the hearing were Kumho's trade secret objections to Plaintiffs' discovery requests.  Because Kumho asserted one or more trade secret objections of varying degrees to nearly every one of Plaintiffs' Requests for Production, the Court inquired during the hearing whether and to what extent Kumho claimed Plaintiffs' discovery requests sought documents or information warranting such a high level of protection that such documents or information could not safely be disclosed even under the terms of a protective order.  Kumho's counsel indicated there are certain "crown jewels" trade secrets that fall into this category.

At the conclusion of the hearing, the Court took Plaintiffs' Motion to Compel Discovery under advisement and ordered Kumho to:  (a) serve amended responses to Plaintiffs' discovery requests, identifying those responses/answers for which responsive documents or information may have existed at one time, but which were no longer available at the time of its response/answer due to Kumho's document retention or destruction policy; (b) serve amended responses to Plaintiffs' discovery requests specifically identifying those requests which Kumho contends seek to discover its "crown jewels" trade secrets that could not safely be produced, even under the terms of a protective order; and (c) provide information on the number of subject

4

model tires (Kumho Road Venture AT, APT, and MT)[5] that would have the same belt skim stock formulation and the number with the same inner liner halobutyl content as the Subject Tire.

On February 24, 2015, Kumho served its First Supplemental Responses and Answers, in which it claims that 50 of Plaintiffs' Requests for Production and three Interrogatories seek documents and information that could not safely be produced even under the terms of a protective order.[6]  Kumho also confirmed in its First Supplemental Responses and Answers that its document retention period for warranty adjustment data is five years, it had produced the warranty adjustment data for 2010–14, and it would supplement the warranty adjustment data for 2009 in a separate supplemental production.  On March 9, 2015, Kumho also submitted to the Court for in camera review its responses to the Court's inquiry regarding the number of Road Venture AT, APT, and MT tires with the same belt skim stock formulation and inner liner halobutyl content as the Subject Tire.  Having reviewed Kumho's amended discovery responses, in camera submission, all of the briefing on the motion, and the transcript of the motion hearing, the Court is now ready to rule.

---

[5] "AT" refers to an All Terrain tire, "APT" to an All Season tire, and "MT" to a Mud Tire.  The Court will refer to these as "applications" of Road Venture tires.  *See* Kim Aff. (ECF No. 68-2) ¶ 11 ("[E]ven a tire of the same size and model will have differences in design and specification to attain specific performance criteria, i.e., application, whether it is an All Terrain ("AT") tire, Mud Tire ("MT") or All Season ("APT") tire.").

[6] Kumho claims heightened trade secret protection for Requests for Production ("RFP") 21–24, 26, 37, 39–48, 57–67, 69, 74, 83–85, 90–91, 93, 95–107, 113–116; and Interrogatories 10–12.

## II.     DISCOVERY OBJECTIONS BASED UPON CONFIDENTIALITY AND TRADE SECRETS

In its original discovery responses, Kumho asserted three different categories of

confidentiality or trade secret objections:  (a) objections to discovery requests allegedly seeking

production of "highly confidential and proprietary information"; (b) objections to discovery

requests allegedly seeking either Kumho's "most secret manufacturing information" or "most

secret production information"; and (c) objections to discovery requests seeking Kumho's

allegedly "most secret research, development, information, formula, method, technique, or

process" that constitute its trade secrets.  For the last two categories, Kumho contends this

information has a significant economic value and cannot be safely produced even with a

protective order in place.  Kumho also contends that Plaintiffs have made no showing the

requested information is relevant to prove that a defect existed in the Subject Tire

In the First Supplemental Responses and Answers that it served pursuant to the Court's

direction, Kumho supplemented its trade secret objections to 50 of Plaintiffs' Requests for

Production and three Interrogatories.  Kumho stated that information and documents sought by

these discovery requests are entitled to "heightened protection because they pertain to skim stock

compounds and formulas that constitute [Kumho's] highest level of trade secrets" (the

"Heightened Protection Objections").  Although the specific language of these Heightened

Protection Objections varies slightly, the following is representative:

> Subject to this Court's February 17, 2015 direction and [Kumho's] original
> response and applicable objections, [Kumho] states that the information and
> documents directly sought by this request are entitled to heightened protection
> because they pertain to skim stock compounds and formulas that constitute
> [Kumho's] highest level of trade secrets, encompassing its most secret research,
> development, techniques and processes.  These most highly confidential trade

secrets should not be discoverable, even where a Protective Order is in place, absent plaintiffs demonstrating through competent and admissible evidence that it is relevant to, and necessary for, proving the existence of a defect in the subject tire and that their "need" outweighs the burden on [Kumho] in producing it.[7]

Kumho asserted this supplemental Heightened Protection Objection to 34 Requests and three Interrogatories to which it previously objected as seeking its "most secret research and development" trade secrets and to 15 Requests to which it had previously objected only as seeking its most secret production and manufacturing information. Kumho asserted this Heightened Protection Objection to one Request, RFP 84, to which it previously only objected as seeking "highly confidential and proprietary information."

## A.   Objections that Discovery Requests Seek Highly Confidential and Proprietary Information

Kumho objects to RFP 2–20, 25, 28, 36, 70–71, 76, 78–79, 82, and Interrogatories 5–6, and 14 on the basis that they seek "highly confidential and proprietary information," without any showing by Plaintiffs of the relevance of this information. Kumho argues the damage caused by producing this information would outweigh any evidentiary value. It claims that this secret information is very valuable not just to it, but also to its competitors, and is not relevant.

"A concern for protecting confidentiality does not equate to privilege."[8] While a confidentiality objection may be appropriate when a party seeks a protective order limiting the parties' use or disclosure of confidential information, it generally is not a valid objection for

---

[7] Kumho's First Supp'l Resp. & Objs. to Pls.' First RFP.

[8] *High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM-DJW, 2011 WL 4008009, at *2 (D. Kan. Sept. 9, 2011).

withholding discovery altogether.[9]  Courts in this District have repeatedly held that "confidential" does not equate to "nondiscoverable" or privileged.[10]

The Protective Order (ECF No. 43) entered in this case limits the disclosure, dissemination, and use of any confidential research, development, or proprietary business information produced during discovery.  The Court further notes that the Protective Order specifically excludes the sharing provision proposed by Plaintiffs, which would have allowed Plaintiffs to share designated confidential information with attorneys representing plaintiffs in other Kumho Road Venture tire tread or defect cases against Defendants.

The Court also notes that Kumho did not include these discovery requests among those identified in its supplemental responses as requiring heightened protection.  In light of the protections of the Protective Order, Kumho's objections based on the highly confidential and proprietary nature of the information sought by RFP 2–20, 25, 28, 36, 70–71, 76, 78–79, 82, and Interrogatories 5–6, and 14 are therefore overruled.  The Protective Order (ECF No. 43) entered in this case has adequate provisions for the protection of any confidential research, development or proprietary business information produced during discovery.

---

[9] *Id.*

[10] *AKH Co. v. Universal Underwriters Ins. Co.*, 300 F.R.D. 684, 692 (D. Kan. 2014); *Williams v. Evogen, Inc.*, No. 12-2620-JWL-KGG, 2013 WL 3773840, at *3 (D. Kan. July 17, 2013). *See also Kendall State Bank v. West Point Underwriters, LLC*, No. 10-2319-JTM-KGG, 2013 WL 593957, at *2 (D. Kan. Feb. 15, 2013); *McCloud v. Bd. of Geary Cnty. Comm'rs*, No. 06-1002-MLB-DWB, 2008 WL 1743444, at *4 (D. Kan. Apr. 11, 2008) (the fact that records may be private or confidential does not mean they are privileged and not discoverable).

**B.    Objections that Discovery Requests Seek Most Secret Production and Manufacturing Information**

Kumho objects to RFP 30, 32, 39–47, 51, 55–57, 59–62, and 90 to the extent they seek Kumho's "most secret manufacturing information" or "most secret production information" that:

> is not publicly or generally known and has a significant economic value, constituting trade secrets that are not to be revealed without plaintiffs demonstrating that they are relevant to, and necessary for, proving the existence of a defect in the subject tire, even where a Protective Order is in place.

Kumho did not supplement its responses to RFP 30, 32, 51 and 55–56 to seek heightened trade secret protection.  The Court thus considers these objections based solely on Kumho's original objections that the Requests seek Kumho's most secret manufacturing or production information.  The Court finds that Kumho has not demonstrated that the information and documents sought by RFP 30 and 32 (number of tires produced), 51 (Subject Tire specifications and blueprints) and 55–56 (Ford evaluations and correspondence) would require the disclosure of secret manufacturing or production information that constitutes a trade secret and that disclosing such information, especially given the protections of the non-sharing Protective Order already entered in the case, would be harmful to Kumho.  The specifications and blueprints for the Subject Tire are clearly relevant and materially significant to the claims in this case.  Kumho states in its response to RFP 51 that it produced the design drawings and manufacturing specifications for the Subject Tire, and the Cut Measure Drawing and Cut Measure Sheet. Further, with regard to RFP 55–56, as it is likely that any evaluations and correspondence would have been communicated to Ford, this undercuts Kumho's claim that the information is its "most secret" information.  Kumho's objections that RFP 30, 32, 51, and 55–56 seek its "most secret manufacturing or production information" are therefore overruled.

9

Kumho supplemented its original responses and objections to RFP 39–47, 57, 59–62, and 90, asserting its Heightened Protection Objection for Kumho's highest level of trade secrets.  For each of these Requests, Kumho supplemented its Response and Objection as follows:

> Subject to this Court's February 17, 2015 direction and [Kumho's] original response and applicable objections, [Kumho] states that the information and documents sought by this request are entitled to heightened protection because, based upon the broad language utilized in the request, they would cover skim stock compounds and formulas that constitute [Kumho's] highest level of trade secrets, encompassing its most secret research, development, techniques and processes.  These most highly confidential trade secrets should not be discoverable, even where a Protective Order is in place, absent plaintiffs demonstrating through competent and admissible evidence that it is relevant to, and necessary for, proving the existence of a defect in the subject tire and that their "need" outweighs the burden on [Kumho] in producing it.[11]

Under Fed. R. Civ. P. 26(b)(1), privileged matter is exempt from discovery.[12]  Although there is no federal discovery privilege for trade secrets,[13] state law governs privileges in civil diversity cases.[14] As this is a diversity case and the Court sits in Kansas, the Court looks to Kansas law to determine whether any privilege applies.

Kansas recognizes a trade secret privilege, which is embodied in K.S.A. 60-432:

---

[11] Kumho's First Supp'l Resp. & Objs. to Pls.' First RFP.

[12] *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense.") (emphasis added).

[13] *See* rejected Fed. R. Evid. 508.  *See also Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981) ("(T)here is no absolute privilege for trade secrets and similar confidential information.") (quoting *Federal Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 362, (1979)).

[14] *See* Fed. E. Evid. 501;  *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1244 (10th Cir. 2006) (applying Oklahoma law defining a "trade secret" to determine whether the trade secrets privilege applied to a list of suppliers).

The owner of a trade secret has a privilege, which may be claimed by the owner or his or her agent or employee, to refuse to disclose the secret and to prevent other persons from disclosing it if the judge finds that the allowance of the privilege will not tend to conceal fraud or otherwise work injustice.

K.S.A. 60-3220(4) defines a "trade secret" as:

[I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

(ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.[15]

Based on its review of Kumho's objections to Plaintiffs' discovery requests, the Court finds that Kumho has not expressly made a claim that the information sought is subject to a trade secret *privilege* pursuant to Kansas state law.  The Court thus finds that Kumho is not asserting a trade secret privilege as recognized under Kansas law, but rather is seeking an order under Fed. R. Civ. P. 26(c)(1)(G).

Under Rule 26(c)(1)(G), the court may, for good cause, issue an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."  When a party seeks such a protective order under Rule 26(c)(1)(G), it "must first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful."[16] If the party makes such a showing, "the

---

[15] K.S.A. 60-3220(4).

[16] *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1190 (10th Cir. 2009) (quoting *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981)).

burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action."[17] The court must then "balance the need for the trade secrets against the claim of injury resulting from disclosure."[18]  It is within the sound discretion of the court to decide whether trade secrets are relevant and whether the need for them outweighs the harm of disclosure.[19] If the trade secrets are found to be relevant and necessary, the court also has the discretion to fashion appropriate safeguards for their disclosure by means of a protective order.[20]

Kumho asserts Heightened Protection Objections to RFP 39–47, 57, 59–62, and 90 to the extent that they call for the production of information or documents pertaining to Kumho's "skim stock compounds and formulas"[21] that Kumho alleges constitute its highest level of trade secrets. In this case, Kumho has shown that its skim stock[22] compounds and formulas meet the definition of "trade secrets" under K.S.A. 60-3220(4).  It has demonstrated that its skim stock compounds

---

[17] *Centurion*, 665 F.2d at 325.

[18] *Id.*

[19] *Id.* at 326.

[20] *Id.*

[21] Kumho repeatedly asserts its Heightened Protection Objections to the production of its "skim stock compounds and formulas."  The Court finds specifically that this includes Kumho's rubber compound as referenced in Mr. Kim's Affidavit, ¶ 16. The Court construes and applies this phrase throughout this Order such that "skim stock" modifies both compounds and formulas.  To do otherwise would render it impermissibly broad as applying to all of Kumho's formulas of any kind.

[22] "Skim stock is a specially formulated rubber compound that coats the steel belts in a steel-belted radial tire and through vulcanization holds them together." *In re Bridgestone/Firestone, Inc.,* 106 S.W.3d 730, 731 (Tex. 2003).

and formulas provide independent economic value from not being generally known to, and not being readily ascertainable by proper means by, others who can obtain economic value from their disclosure or use.[23]  Kumho also has shown that it has developed numerous intricate measures and invests great time and expense to maintain the secrecy of these closely guarded skim stock compounds and formulas.[24]  In the context of tire defect cases, several courts have found tire skim stock rubber formulas to be trade secrets.[25]

Upon Kumho's showing that its skim stock compounds and skim stock formulas meet the definition of trade secret, the burden then shifts to Plaintiffs to establish that the disclosure of these trade secrets is relevant and necessary to the action.  Plaintiffs state in their Reply (ECF No. 71) that they have not requested discovery of Kumho's skim stock formula, but that their discovery requests are directed only to tires with the same skim stock formula as the Subject Tire.  Kumho's supplemented trade secret objections to RFP 39–47, 57, 59–62, and 90 are therefore sustained only to the extent that these requests encompass Kumho's skim stock compounds and/or formulas.  Kumho must provide responsive information and produce

---

[23] *See* Kim Aff. ¶¶ 5–8, ECF No. 68-2.

[24] *Id.*

[25] *See Hajek v. Kumho Tire Co.,* No. 4:08CV3157, 2010 WL 503044, at *10 (D. Neb. Feb. 8, 2010), *objections overruled,* No. 4:08CV3157, 2010 WL 1292447 (D. Neb. Mar. 30, 2010) (denying plaintiffs' request for Kumho's closely guarded skim stock rubber formula, even as to the accident tire); *Laffitte v. Bridgestone Corp.*, 381 S.C. 460, 476, 674 S.E.2d 154, 163 (2009) (reasons given by plaintiff's experts why the skim stock formula was necessary for their analyses did not rise to the level of specificity required for discovery of trade secrets); *Bridgestone Americas Holding, Inc. v. Mayberry*, 878 N.E.2d 189, 194 (Ind. 2007) (manufacturer adequately demonstrated that steel belt skim stock formula was a trade secret); *In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d 609, 610–613 (Tex. 1998) (conditionally granting mandamus relief directing the trial court to vacate its order compelling tire manufacturer to produce its belt skim stock formula).

responsive documents, but may redact from any responsive documents prior to production information that would disclose its skim stock compounds or skim stock formulas.

Kumho's Heightened Protection Objection only identifies Kumho's skim stock compounds and formulas and does not specifically identify any other formula, compound, technique, or process as constituting its trade secrets, which would be entitled to protection beyond the Protective Order.  Even after Kumho supplemented its objections and lodged its Heightened Protection Objections, it did not identify any specific trade secrets worthy of non-disclosure, other than its skim stock formula and compounds.  To the extent Kumho objects generally to producing trade secrets other than its skim stock formulas and compounds, the Court finds that Kumho has not met its burden to establish that any other particular formula, compound, technique, or process is a trade secret.  This includes Kumho's vague references to its "manufacturing processes."  Kumho has failed to identify any particular aspect(s) of its manufacturing processes that are unique to it, closely guarded, and, if disclosed, would be valuable to competitors and thus would constitute trade secrets.  Kumho fails to convince the Court that its entire tire manufacturing process meets the definition of a trade secret under K.S.A. 60-3220(4).  Further, as Plaintiffs are not competitors of Kumho, the Court finds that this other "manufacturing process" information can be adequately protected under the provisions of the non-sharing Protective Order.

### C.        Objections that Discovery Requests Seek Trade Secrets

Kumho objects to RFP 21–24, 26, 29, 37, 48, 54, 58, 63, 66–69, 72, 74, 83, 85–91, 93, 95–107, 109–120 to the extent they seek Kumho's:

most secret research, development, information, formula, method, technique or process that is not publicly or generally known and has a significant economic value, constituting trade secrets that are not to be revealed without plaintiffs demonstrating that they are relevant to, and necessary for, proving the existence of a defect in the subject tire, even where a Protective Order is in place.[26]

It asserted similar objections to Interrogatories 10–12, objecting that they seek disclosure of information that relates to Kumho's "most secret research and development and to its techniques and processes of tire development and manufacturing formulas and methods," which are not publicly or generally known and constitute trade secrets.[27]

Kumho did not supplement its original responses and objections to RFP 29, 54, 68, 72, and 86–89, and therefore has not sought heightened protection to these Requests. The Court thus rules on the original objections. Upon review of the Requests, the Court finds that Kumho has not demonstrated that the information and documents sought by RFP 29 (tire production numbers), 54 (manufacturing or design defects found) and 68 (tread separation studies and testing), 72 (speed rating), and 86–89 (driver response, effects, risk, and causes of tread separation) require the disclosure of trade secrets or that disclosing such information would be harmful to Kumho, given the protections of the non-sharing Protective Order already entered in the case. Kumho's trade secret objections to RFP 29, 54, 68, 72, and 86–89 are therefore overruled.

Kumho did supplement its original responses and objections to RFP 21–24, 26, 37, 48, 54, 58, 63, 66–67, 69, 74, 83, 85, 90–91, 93, 95–107, 109–120, and Interrogatories 10–12,

---

[26] Kumho's Resps. & Objs. To Pls.' First RFP (ECF No. 65-8).

[27] Kumho's Ans. & Objs. To Pls.' First Interrogs. (ECF No. 65-9).

claiming that these Requests are entitled to heightened protection for Kumho's highest level of trade secrets.  Again, the Court finds that Kumho has not identified any particular formula, compound, technique, or process—other than its skim stock formulas and compounds—such that the Court can conclude they are trade secrets requiring protection beyond the Protective Order. Thus, the Court construes Kumho's supplemental responses as objections to the Requests only to the extent that they seek production of information or documents pertaining to Kumho's skim stock compounds and formulas, which Plaintiffs have indicated they are not seeking.  Therefore, Kumho's trade secret objections to RFP 21–24, 26, 37, 48, 54, 58, 63, 66–67, 69, 74, 83, 85, 90– 91, 93, 95–107, 109–120, and Interrogatories 10–12 are sustained to the extent that any of these Requests seek Kumho's skim stock compounds and formulas.  The Court further sustains Kumho's Heightened Protection Objection to RFP 84 (meeting minutes discussing tread separation), to which it previously had only asserted a confidentiality objection, to the extent that it may encompass Kumho's skim stock compounds and formulas.  Once again, Kumho must provide information and produce responsive documents, but may redact from them its skim stock compounds and/or skim stock formulas prior to production.

### D.  Plaintiffs' Request for a Trade Secrets Privilege Log

After the February 17, 2015 hearing, Plaintiffs contacted the Court regarding their request that Kumho produce a log of all the responsive documents it is withholding from production on the basis that the documents are protected from discovery as trade secrets.  The Court took up the matter at a telephone status conference on March 10, 2015.  After a brief discussion, during which the Court indicated it was not aware of any cases from this jurisdiction requiring a trade secrets privilege log, the Court instructed the parties to file statements, citing any authorities

16

supporting their respective positions on the trade secret privilege log issue.  Having reviewed

those statements (ECF Nos. 85 and 86), the Court denies Plaintiffs' request that Kumho be

required to provide a log of all the responsive documents it has withheld from production as

containing trade secrets.

Plaintiffs do not cite a single authority from the Tenth Circuit in which a party

responding to discovery requests was ordered to provide a trade secrets privilege log.  Nor do

Plaintiffs cite any statutory basis for their request.  And, to the extent Plaintiffs cite cases from

this Circuit requiring parties seeking to withhold documents based upon other types of privileges,

those cases are inapposite.  Moreover, the cases cited provide no guidance regarding the practical

and unwieldy issues as to just what information would be required on a trade secrets privilege

log.

Plaintiffs cite two cases from other jurisdictions, *Chicago Tribune Co. v.

Bridgestone/Firestone, Inc.*[28] and *Third Party Verification, Inc. v. SignatureLink, Inc.*,[29] as

examples of courts requiring privilege logs from parties seeking to withhold documents on trade

secret grounds.  Both cases are distinguishable.

In *Chicago Tribune*, Firestone *voluntarily* created a privilege log of its previously sealed

documents in a settled Firestone court case after members of the media moved to intervene for

the purpose of unsealing Firestone's documents.[30]  Firestone agreed to unseal some of the

---

[28] 263 F.3d 1304, 1313–14 (11th Cir. 2001).

[29] No. 606CV-415-ORL-22DAB, 2007 WL 1288361, at *3 (M.D. Fla. May 2, 2007).

[30] 263 F.3d at 1308.

17

material, but objected to disclosure of certain documents and pages as containing its trade secrets.[31] In support of its objection, Firestone appended a privilege log and affidavit from one of its engineers.[32] Firestone's voluntary preparation of a privilege log in response to nonparty media requests asserting First Amendment rights to view sealed court documents is far different from Plaintiffs' request that this Court order Kumho to provide a privilege log of documents withheld from discovery as trade secrets.

In *Third Party Verification*, the party asserting a trade secret privilege was required to serve a log establishing the essential elements of the privileged relationship or matter.[33] However, in that case, the ruling is based upon a Florida statute that creates a privilege to refuse to disclose a trade secret.[34]

Like Florida, Kansas has a statute, K.S.A. 60-432, which allows the owner of a trade secret "to refuse to disclose the secret and to prevent other persons from disclosing it if the [court] finds that the allowance of the privilege will not tend to conceal fraud or otherwise work injustice." The Florida trade secret privilege statute referenced in the *Third Party Verification* case includes the following additional sentence, which is not present in K.S.A. 60-432: "When

---

[31] *Id.*

[32] *Id.*

[33] 2007 WL 1288361, at *3.

[34] *Id.*

the court directs disclosure, it shall take the protective measures that the interests of the holder of the privilege, the interests of the parties, and the furtherance of justice require."[35]

In federal court, a party asserting a privilege in response to discovery requests is subject to the requirements of Fed. R. Civ. P. 26(b)(5)(A), which requires a party withholding information otherwise discoverable by claiming that the information is privileged to:

> expressly make the claim;  and describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

As the Court finds Kumho is not asserting a trade secret privilege, the requirements of Rule 26(b)(5)(A) are not applicable.  The Court further agrees with Kumho that there is no controlling legal authority for production of a trade secret log under the facts and circumstances here.  Additionally, by limiting the trade secret protection to Kumho's skim stock formula and compounds and requiring Kumho to produce redacted responsive documents, the Court has addressed the concerns expressed by Plaintiffs on this issue.  Moreover, unlike an attorney-client privilege objection, information that ordinarily would be required for a privilege log, such as the document's date, author, recipient, and purpose of preparation, would likely not be helpful information in assessing any trade secret privilege.  Plaintiffs' request that Kumho be compelled to produce a log of all responsive documents being withheld as trade secrets is therefore denied.

---

[35] Fla. Stat. § 90.506.

### III.    OBJECTIONS TO REQUESTS SEEKING DISCOVERY OF TIRES OTHER THAN THE SUBJECT TIRE[36]

Kumho asserts overly broad, unduly burdensome, and relevance objections to many of Plaintiffs' discovery requests to the extent that they are "not limited in time or scope to the subject tire, tires of the same model and size for the same time period, tires that share a common green specification, tires in the U.S. market, the subject plant, or the accident that is the basis of this lawsuit."  Kumho contends that the scope of these discovery requests should be limited to tires that are "substantially similar" to the Subject Tire and that "substantially similar" should be defined as the same subject model and size tire that was manufactured in Vietnam, like the Subject Tire.  To the extent it responded to Plaintiffs' discovery requests, Kumho unilaterally limited its production to responsive information that it has located pertaining to "the Subject Tire and the subject model and size tire."[37]

Kumho argues the only tires that should be considered "substantially similar" to the Subject Tire for purposes of discovery are tires with the same Green Tire Specifications ("GTS") as the Subject Tire.  Its expert, Joseph Grant, explains that "green tires" are the "assembled components for a tire prior to being vulcanized (exposed to high heat and pressure within a mold)," and that "green tire specifications" are the "specifications for such tires."[38] The National Highway Traffic Safety Administration refers to tires made to such specifications as "common

---

[36] Kumho asserts these objections to RFP 6–22, 26, 29, 32–38, 40–50, 52–56, 59–71, 75, 78–81, 83–91, 93, 95, 98–115, 117–120; and Interrogatories 5–6, 8–9, 11–13, and 16.

[37] Kumho's Resp. (ECF No. 68) at 6.

[38] Grant Aff. ¶ 12, ECF No. 68-3.

green tires."[39]  "Common greens" are "tires that are produced to the same internal specifications but that have, or may have, different external characteristics and may be sold under different tire line names."[40]  Kumho states that if it had manufactured other tires using the same common green, it would have produced some documents and information for those tires as well, but in this case, there are no common greens to the Subject Tire.

Plaintiffs agree that the scope of discovery should be limited to tires that are "substantially similar" to the Subject Tire, but they define the term to include tires "that may have the same components, designers, and/or plant of manufacture as the Subject Tire."[41] Plaintiffs generally contend that tires are substantially similar to the Subject Tire if they share common components, such as halobutyl content percentage and/or skim stock formulation.  They argue it is critical that the Court allow them to discover information regarding the design and manufacture of "substantially similar" tires.  They contend this information could indicate the existence of common manufacturing and design defects in tires with the same components as the Subject Tire, as well as reveal key differences in similar tires that would constitute a safer alternative design.

Kumho argues that Plaintiffs' expansive definition of what should be considered a "substantially similar" tire is not a tailored definition and would encompass approximately 482 different sizes and applications of Road Venture tires manufactured at its three plants since

---

[39] *Id.*

[40] *Id.*

[41] Pls.' Mot. (ECF No. 65) at 5.

2007–08, many very dissimilar to the Subject Tire[42] over an unspecified time period.  Kumho argues that Plaintiffs' discovery demands seek a massive amount of documentation related to other Kumho tires merely because those tires either bear the name "Kumho Road Venture" or allegedly have one so-called similar component.

Fed. R. Civ. P. 26(b) provides the general scope and limits of discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C)."[43]  Under Rule 26(b)(2)(C)(iii), the court must limit the extent of discovery otherwise allowed if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."[44]

In tire defect products liability cases, courts have limited the scope of discovery under Rule 26(b)— finding that the burden or expense of responding to discovery requests outweighed the likely benefit—where the requests required the responding party to collect volumes of information on tires other than the subject tire, "without any threshold evidentiary showing of how those tires [were] similar to the accident tire for the purposes of [the] litigation, or that the

---

[42] Kim Aff. ¶¶ 10–14.

[43] Fed. R. Civ. P. 26(b)(1).

[44] Fed. R. Civ. P. 26(b)(2)(C)(iii).

information requested [had] any relationship to the underlying cause of the alleged tread separation at issue."[45]  The Court located two district court cases in the Tenth Circuit that have addressed whether to allow discovery of "substantially similar" tires.  The two cases reached very different results.[46]

In *Petersen v. DaimlerChrysler Corp.*,[47] the District of Utah rejected defendant Cooper's argument that the scope of discovery should be limited to tires with the same Green Tire Specification as the subject tire in that case, i.e., same make, model, and size tires as the subject tire.[48]  Cooper sought a protective order relative to the plaintiffs' multiple discovery requests, which sought information for what it believed were improperly broad groups of products and topics, including:

> (1) "any steel belted radial passenger or light truck tire of similar 'skim stock'" from 1994 to 2007; (2) all "Cooper Wildcat LT All Terrain radial tires"; (3) any documents that reference the issue of "quality control and/or quality assurance"; and (4) any documents relating to "the study of tire durability" or "tread separation analysis."[49]

---

[45] *Hajek*, 2010 WL 503044, at *8.

[46] *Petersen v. DaimlerChrysler Corp.*, No. 1:06-CV-00108-TC-PMW, 2007 WL 2391151, at *3–4 (D. Utah Aug. 17, 2007), *aff'd sub nom. Peterson v. DaimlerChrysler Corp.*, 2007 WL 3286694 (D. Utah Oct. 29, 2007); and *Gonzales v. Goodyear Tire & Rubber Co.*, No. 05-941 BB/LFG, 2006 WL 7290047, at *6–15 (D.N.M. Aug. 10, 2006).

[47] 2007 WL 2391151, at *3–4.

[48] The defendant asserted that discovery should be limited to the eleven tire brands made to GTS 5015, which was the GTS of the tire at issue.  *See In re Cooper Tire*, 568 F.3d at 1184 (describing the background in the underlying *Petersen* case).

[49] *See* Cooper Tire & Rubber Co.'s Mem. in Supp. of its Mot. for Protection from Plfs. Excessive Scope of Disc. at 5, *Petersen v. DaimlerChrysler Corp.*, No. 1:06-CV-00108-TC-PMW (D. Utah May 23, 2007), ECF No. 141.

The *Petersen* court found that Cooper's focus on the relationship of the requested information to the subject tire was overly narrow at the discovery stage of the case and contrary to the intended purpose and scope of discovery.[50]  Noting that Cooper's proposed definition covered only tires identical to the subject tire in make, model, and size, the court found that, given the plaintiffs' "broad theory of the case," limiting discovery in the fashion proposed by Cooper would be premature and could potentially deprive the plaintiffs of discovery supporting that theory.[51]

After the district judge affirmed the magistrate judge's ruling, Cooper filed a petition for writ of mandamus requesting that the Tenth Circuit Court of Appeals vacate the district court's discovery order.[52]  The Tenth Circuit denied the petition for writ of mandamus in the case *In re Cooper Tire & Rubber Co.*, concluding that under the high legal hurdle for issuance of a writ, Cooper had not shown a clear and indisputable right to a writ and "[a]ny possible errors by the district court did not rise to the level of a gross abuse of discretion or usurpation of judicial power."[53]  Addressing Cooper's claim that the district court applied the incorrect definition of relevance, the Tenth Circuit found that "[b]ecause the plaintiffs' theory of the case includes the argument that Cooper was on notice of the tread separation problem, the district court was not clearly in error in concluding that information on tires manufactured to specifications other than

---

[50] *Petersen,* 2007 WL 2391151, at *3.

[51] *Id.*

[52] *In re Cooper Tire*, 568 F.3d 1180.

[53] *Id.* at 1197.

24

GTS 5015 could tend to lead to discoverable evidence."[54]  It also distinguished the case from the

*Koch* case, finding the plaintiff's claims were not purely speculative.[55]

> [T]his is a products liability action where the tread of one of Cooper's tires did, in
> fact, separate. The plaintiffs identified five specific design and manufacturing
> flaws that they believe led to the separation. The plaintiffs also alleged that
> Cooper had been on notice of the problem of tread separation and yet made no
> design changes and issued no warnings to consumers. We cannot conclude that
> the district court's allowance of the discovery at issue here authorized plaintiffs to
> "abuse the judicial process."[56]

In direct contrast to the *Petersen* court, the District of New Mexico court in *Gonzales v.*

*Goodyear Tire & Rubber Co.*[57] essentially adopted the defendant's "common green tire"

definition as the relevant group of tires.  The defendant argued that discovery of information

about its tires should be limited to the group of steel belted radial light truck tires made from the

"same green tire, cured in the same mold shape, with the same tread geometry, during the same

time period, in the same plant in Valencia, Venezuela [as the subject tire in that case], as tires

outside this group [were] not sufficiently similar to the subject tire to meet the relevance test."[58]

The *Gonzales* court agreed with the defendant that the fact it identified tires by load range for

internal corporate purposes did not mean that the tires were legally "substantially similar" from

---

[54] *Id.* at 1191.

[55] *Id.* at 1193 (citing *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1238 (10th Cir. 2000)).

[56] *Id.*

[57] 2006 WL 7290047, at *15.

[58] *Id.* at *11.

an engineering standpoint in such a way as to render discoverable a wide range of information about all categories of tires.[59]

In tire defect cases from other circuits, courts have also reached differing conclusions on what constitute "substantially similar" tires for purposes of discovery.  Some courts have found substantially similar tires to be limited to the green tire specifications that correspond to the subject tire.[60]  Other courts have denied or limited plaintiffs' discovery requests seeking information about tires other than the subject tire, because of differences between the other tires and the subject tire.[61]

_____

[59] *Id.* at *14.

[60] *See, e.g., Johnson v. Hankook Tire Mfg. Co.,* No. 2:09CV113-MPM-DAS, 2011 WL 39042, at *2 (N.D. Miss. Jan. 5, 2011) (finding defendant's position more compelling and limiting plaintiff's discovery requests to "the subject model and size tire and any tire that shares a common green internal specification as opposed to any tire that might share a generic component"); *Alvarez v. Cooper Tire & Rubber Co.*, 75 So. 3d 789, 794–95 (Fla. Dist. Ct. App. 2011) (affirming the trial court's limitation of discovery to the "subject tire and substantially similar tires," defined as "tires designed and manufactured according to Green Tire Specification 3011 and 3163"); *Bradley v. Cooper Tire & Rubber Co.*, No. 4:03CV94LR, 2006 WL 3360926, at *3 (S.D. Miss. Nov. 20, 2006) (limiting discovery to GTS and finding that the plaintiffs had not established that any other tire was sufficiently similar for purposes of establishing a design defect).

[61] *Hajek,* 2010 WL 503044, at *8 (sustaining the defendant's overbroad and unduly burdensome objections to plaintiff's discovery requests where defendant limited its document production to the accident tire or tires exactly like the accident tire); *Diaz v. Goodyear Tire & Rubber Co.*, No. 07-353-B-M2, 2009 WL 1298219, at *3 (M.D. La. May 8, 2009) (denying the plaintiff's motion to compel to the extent it sought inner liner documents and information as they relate to passenger car tires other than the subject tire, finding that plaintiffs had not established that such other tires were substantially similar to the subject tire); *Murphy v. Cooper Tire & Rubber Co.*, No. 5:08cv40/RS/EMT, 2008 WL 5273548, at *5 (N.D. Fla. Dec. 18, 2008) (limiting the plaintiffs' discovery requests as to both tire model and time where the plaintiffs did not show any other tire was substantially similar or that a wider time frame for production was reasonable, finding the burden or expense of complying with requests seeking information related to all light truck tires manufactured at the Findlay, Ohio plant for a 17-year period outweighed its likely benefit); *Barcenas v. Ford Motor Co.*, No. C 03-04644, 2004 WL 2827249, at *2–7 (N.D. Cal. Dec. 9, 2004) (finding the different models than the subject tire had so many design differences and other differences that they were essentially different products).

In *Hajek v. Kumho Tire Co.*, the plaintiffs served requests for production of documents pertaining to tires other than the subject tire.[62]   One set of discovery requests asked the defendant to produce documents for "related tires," which were defined as "all passenger and light truck tires [the defendant] made, distributed, marketed or sold that were manufactured using the same or substantially the same steel belt skim stock rubber formula as the accident tire."[63]   Another set of discovery requests sought documents pertaining to "subject model tires," defined as "all Kumho Road Venture tires of the size 265/75R16 [the defendant] made, distributed, marketed or sold."[64]   Another set requested documents pertaining to the entire "Kumho Road Venture line of tires."[65]   The defendant objected that the requests were overbroad, unduly burdensome, and harassing because they sought discovery regarding tires other than the accident tire or tires similar to the accident tire.[66]   The court sustained the overbroad objections.   It found that the plaintiffs' definition of "related tires" included all tires manufactured with the same skim stock rubber as the accident tire, but there was nothing indicating the accident tire failed due to a defect in its rubber or the rubber's adhesion to the tire's steel belts.[67]   It also found nothing indicating a common component of all "Kumho Road Venture line of tires" caused the accident tire to fail.

---

[62] *Hajek*, 2010 WL 503044, at *2.

[63] *Id.*

[64] *Id.*

[65] *Id.* at *3.

[66] *Id.* at *5.

[67] *Id.* at *7.

Finally, the *Hajek* court concluded there was no showing that all tires manufactured with the same or similar skim stock rubber as the accident tire, all "Kumho Road Venture line of tires," or all such tires of the same size as the accident tire were sufficiently similar to the accident tire for the purposes of obtaining information relevant to the litigation.[68]

Other courts have found "substantially similar" tires should not be limited to tires with the same green tire specifications or another similar limitation and have instead permitted discovery regarding certain tires other than the subject tire.[69]  In *Hartsock v. Goodyear Dunlop Tires North America LTD*,[70] the District of South Carolina court rejected the defendants' limitation of their discovery response to a request seeking information regarding other litigation and claims for defendant's G670RV tires.  The defendant objected that none of the ten different tires with the G670RV name were substantially similar to the subject tire because they were manufactured in different plants, and had different specifications, components and load

---

[68] *Id.* at *8.

[69] *See Hartsock v. Goodyear Dunlop Tires N. Am. LTD*, No. 2:13-CV-00419-PMD, 2013 WL 6919715, at *8 (D.S.C. Nov. 22, 2013), *aff'd sub nom. Hartsock v. Goodyear Tire & Rubber Co.*, No. 2:13-CV-00419-PMD, 2014 WL 51237 (D.S.C. Jan. 7, 2014) (rejecting the defendants' limitation of their discovery responses to the subject tire and allowing discovery pertaining to ten other tires);  *Albee v. Cont'l Tire N. Am., Inc.*, No. S-09-1145 LKK/EFB, 2010 WL 1729092, at *6 (E.D. Cal. Apr. 27, 2010) (denying reconsideration of magistrate judge's discovery order finding the plaintiff was entitled to investigate whether tires were similar with respect to certain alleged defect traits despite being a different size than the allegedly defective tire); *Mann ex rel. Akst v. Cooper Tire Co.*, 33 A.D.3d 24, 34–35, 816 N.Y.S.2d 45 (2006) (modifying motion court's opinion and finding the motion court erroneously limited the scope of disclosure to tires with the same green tire specifications as the tire in question; the scope of discovery should have included documents relating generally to the tread separation defect or problem).

[70] 2013 WL 6919715, at *6.

capacities.[71]  The plaintiff explained that because one of his theories was that the subject tire's inner liner was too thin by design and became even thinner during a faulty manufacturing process, information on the ten other G670RV tires could show that a reasonable alternative design existed.[72]  The court noted that although defendant had shown there were differences among the ten G670RV tires, it provided no information about how the inner liners were similar or different.  The *Hartsock* court concluded discovery pertaining to all ten G670RV tires was warranted.[73]

In other types of product defect cases, usually where the product had more discrete and identifiable components or parts, the cases have also used the substantial similarity test to determine whether to allow discovery of other product models.[74] The Eighth Circuit, in *Hofer v. Mack Trucks, Inc.*,[75] has indicated that "the courts have set forth no black letter rule of law regarding discovery of predecessor models in products liability cases, other than to state that discovery of similar, if not identical, models is generally permitted."[76] It further recognized that these courts have "undertaken a fact specific determination of the extent of the similarities or

---

[71] *Id.* at *6.

[72] *Id.* at *8

[73] *Id.*

[74] *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 381 (8th Cir. 1992) (truck), *Piacenti v. General Motors Corp.*, 173 F.R.D. 221, 225 (N.D. Ill. 1997) (sport utility vehicle); *Fine v. Facet Aerospace Prods. Co.*, 133 F.R.D. 439, 441 (S.D.N.Y. 1990) (aircraft fuel tank).

[75] 981 F.2d at 380–81.

[76] *Id.*

dissimilarities, and have inquired about the basis for the discovery request."[77] In a case addressing discovery arguments similar to the arguments in this case, *Fine v. Facet Aerospace Products Co.*,[78] the court commented that "[i]n product liability actions it is frequently difficult to judge which of a manufacturer's products are sufficiently similar to the allegedly defective product to be subject to discovery. Generally, different models of a product will be relevant if they share with the accident-causing model those characteristics pertinent to the legal issues raised in the litigation."[79]

In some of the tire cases, the courts place the burden on the party seeking discovery of other tires to demonstrate the tires are substantially similar to the subject tire.[80] The Court disagrees with these cases to the extent they place the burden on the plaintiffs to show substantial similarity at the discovery stage. Typically, unless a discovery request is overly broad, irrelevant, or unduly burdensome on its face, "the party *asserting* the objection has the duty to

---

[77] *Id.* at 381.

[78] 133 F.R.D. 439, 441 (S.D.N.Y. 1990).

[79] *Id.*

[80] *See Alvarez*, 75 So. 3d at 794 ("The burden is on the plaintiff to demonstrate "substantial similarity" when seeking discovery regarding other products manufactured by the defendant); *Gonzales*, 2006 WL 7290047, at *10 ("It is Claimants' burden to demonstrate similarity [for purposes of discovery], and they have not yet provided the Court with any expert testimony to counter [defendant's expert] affidavit."); *Barcenas*, 2004 WL 2827249, at *3 ("As the moving party, Plaintiffs bear the burden of establishing that the different products are substantially similar and that the discovery is relevant or reasonably calculated to lead to the discovery of admissible evidence.").

support its objections."[81]  Thus, "the objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable."[82] The Tenth Circuit has further noted that the party opposing discovery should bear the burden of establishing whether the Rule 26(b)(2)(iii) proportionality or good faith requirements have been met.[83]

While a plaintiff would have the burden of showing substantial similarity when attempting to introduce evidence at trial about other products, the plaintiff should not be required to show substantial similarity to merely obtain discovery pertaining to other substantially similar products. [84]  Placing the significant burden of proving substantial similarity on a plaintiff to *obtain discovery* in the first instance would be misplaced, given that the plaintiff has not yet obtained the information it would need to *prove* substantial similarity.  Moreover, the defendant and not the plaintiff would have access to the information necessary to prove or disprove

---

[81] *Konecny v. BNSF Ry. Co.*, No. 13-2369-KHV-KGG, 2014 WL 2804034, at *2 (D. Kan. June 20, 2014) (quoting *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 671 n.36 (D. Kan. 2004)) (emphasis added).

[82] *Id.*

[83] *In re Cooper Tire*, 568 F.3d at 1197 n.11 (establishing the existence of the Fed. R. Civ. P. 26(b)(2)(iii) factors was "likely a burden [the objecting party] bore").  *See also* 7 James Wm. Moore et al., *Moore's Federal Practice* § 37.22[2][d] (3d ed. 2007), 7-37 Moore's Federal Practice - Civil § 37.22 (LEXIS). ("The burden of establishing that the proportionality or good faith requirements have not been met should be placed on the party who opposes the discovery, provided the movant has satisfied the court that the information sought meets the relevance requirements.").

[84] *See A.H. ex rel. Hadjih v. Evenflo Co.*, No. 10-CV-02435-MSK-KMT, 2011 WL 3684807, at *4 (D. Colo. Aug. 23, 2011) ("Generally, courts considering products liability cases hold that in order to be entitled to discovery concerning other incidents, plaintiff need not lay the same foundation of substantial similarity as would be necessary to support admission into evidence").

substantial similarity of the defendant's other products.[85]  As the Eastern District of California recognized in the tire tread and/or belt separation case, *Albee v. Continental Tire North America, Inc.*,[86] "[i]nformation necessary to determine whether products are similar will ordinarily be within the control of the manufacturer and/or designer. The rules cannot be read as imposing a 'Catch-22' that would require proof of similarity before a party may discover evidence of similarity."[87]

In this case, Kumho urges the Court to adopt its definition of "substantially similar" tires, that is tires with the same green tire specifications as the Subject Tire.  But Kumho admits in its briefing that there are no common greens to the Subject Tire.[88]  Kumho confirmed this at the February 17, 2015 hearing, when the Court asked Kumho whether there were other tires being produced with the same green tire specification as the Subject Tire. Kumho indicated that the Subject Tire has "no common greens ever."[89]  At the hearing, Kumho also clarified its position that discovery in this case should be limited to the Subject Tire and the subject model and size tires.

---

[85] *See Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL, 2005 WL 731070, at *4 (D. Kan. Mar. 30, 2005) ("[I]f a party resists discovery on the grounds that providing the information would be too burdensome, the [party moving to compel] often has no knowledge as to how the information sought is maintained in the ordinary course of business.").

[86] 2010 WL 1729092, at *7.

[87] *Id.*

[88] Kumho's Resp. (ECF No. 68) at 13.

[89] Feb. 17, 2015 Mot. Hr'g Tr. 43, ECF No. 87.

Kumho's argument is simple. "[U]nless two tires are made from the same common green tire specification, there will be differences in the tire[s] that make them mechanically different."[90] No tire currently produced by Kumho has the same green tire specification as the Subject Tire.[91] Therefore, there are no tires "substantially similar" to the Subject Tire[92] and, according to Kumho, Plaintiffs' discovery regarding the alleged tire defects should be limited to examining the remaining physical evidence on the Subject Tire itself.[93]  The essence of Kumho's argument is that Plaintiffs should be barred from discovery regarding any tire other than the Subject Tire, because none of those other tires would be "identical" to the Subject Tire.[94]

In its Response and at oral argument, Kumho relied heavily upon the *Hajek* case.[95]  Like this case, the plaintiff in *Hajek* served extensive discovery requests upon Kumho, who objected on grounds that the requests were overly broad, unduly burdensome, and intended to harass, as well as on grounds that much of the information requested constituted trade secrets that were not

---

[90] Kumho's Resp. (ECF No. 68) at 13.

[91] *Id.*

[92] *Id.*

[93] Grant Aff. ¶ 21.

[94] *See* Grant Aff. ¶ 13 ("Even if one were to find two tires with the same rim size from the same product line, they would not necessarily be ***identical***…."); *Id.* at ¶ 16 ("A brand name like 'Road Venture' does not define a ***uniform*** set of tires"); *Id* at ¶ 17 ("Whereas different specifications of tires may include some common component parts or compounds, the final product cannot be considered ***the same***….") (emphasis added throughout).

[95] 2010 WL 503044.

discoverable.[96]  Subject to those objections, Kumho produced responsive documents limited to only those regarding the tire involved in the auto accident in that case or tires exactly like it.[97]

The court in *Hajek* denied the plaintiff's motion to compel.[98]  Thus, the scope of the plaintiff's discovery was limited to tires essentially identical to the subject tire in that case. However, *Hajek* is not binding precedent on this Court and, in any event, is factually distinguishable.  Notably, Plaintiffs in this case and the plaintiffs in *Hajek* relied upon the same tire expert, Troy Cottles.  The Court has reviewed the Cottles affidavits filed in each case.  While many paragraphs of the affidavit in this case quote essentially verbatim paragraphs from the affidavit in *Hajek*, there is a material difference.  In this case, Mr. Cottles identifies six alleged manufacturing and/or design defects in the Subject Tire.[99]  As the court in *Hajek* noted, however, Mr. Cottles did not identify any particular defects in the tire at issue in that case.[100]

Kumho's proposed discovery limitation that defines "substantially similar" tires as the Subject Tire and subject model and size tires is too narrow.  The often utilized limitation on the scope of discovery in products liability cases is not, as Kumho suggests, to "identical" tires but

---

[96] *Id.* at *2–5.

[97] *Id.* at *5.

[98] *Id.* at *8.

[99] Cottles Aff. ¶ 10, ECF No. 71-4.

[100] "[T]here is nothing before the court indicating the accident tire failed due to a defect in its rubber or the rubber's adhesion to the tire's steel belts." *Hajek*, 2010 WL 503044, at *7. "For example, there is nothing indicating that the engineering specifications for the accident tire, the percentage of halobutyl . . . used in its innerliner . . . or insufficiency of nylon (or rubber) caps caused the alleged tread separation in the accident tire." *Id.*

rather to "substantially similar" tires.  This case is distinct from the cases cited by Kumho in that Kumho admits there are no other tires with the same green tire specification as the Subject Tire. Moreover, unlike *Hajek*, where the court found the plaintiff's broad discovery requests to be a "fishing expedition," Plaintiffs have identified through their expert's affidavit at least six alleged manufacturing or design defects in the Subject Tire that they allege caused the tire tread separation.  Discovery of some tires other than the Subject Tire and their alterative design is warranted especially given Plaintiffs' design defect allegations.  Finally, the Court is cognizant of the distinction between admissibility of evidence at trial and the discoverability of that evidence, which is especially significant where a threshold question is factually intensive.[101]

On the other hand, the scope of discovery pertaining to "substantially similar" tires as sought by Plaintiffs' discovery requests is too broad.  Although they claim to have tailored their discovery requests to the tires they consider substantially similar to the Subject Tire, Plaintiffs paint with a very broad brush.  They claim that discovery regarding all Kumho Road Venture AT tires of all sizes (as requested in their "SUBJECT LINE TIRES" discovery requests) and all Kumho Road Venture AT, APT, and MT tires of all sizes (as requested in their "SUBJECT MODEL TIRES" requests) is warranted because the subject matter of this action is a defective Kumho Road Venture AT tire and there is a "strong possibility" that tires with the same name also have the same or similar characteristics.  In addition, Plaintiffs take the position that information regarding Kumho passenger and light truck tires with either the same amount of halobutyl in the inner liner or the same skim stock formula as the defective Kumho Road

---

[101] *Albee*, 2010 WL 1729092, at *7.

Venture AT tire (as requested in their "SIMILAR TIRES" discovery requests) is also discoverable because it is possible that tires with the same ingredients also have the same or similar characteristics.

Plaintiffs offer the affidavit of their expert, Troy Cottles, in support of their definition of what should constitute a "substantially similar" tire.  Mr. Cottles concludes that information regarding the tires that share certain similarities with the Subject Tire will greatly assist his expert analysis of the tire failure at issue in this case.  These tires would include:

> Tires that have the same design features (e.g., belt width, nylon cap ply configuration) are manufactured out of the same materials and compounds (e.g., skim stock rubber and innerliner compound), are made on the same machines by the same employees, and are subject to the same quality control testing, and surveillance ultimately exhibit the same failure mode and the same design and manufacturing defects.[102]

However, Kumho points out that there have been approximately 482 different sizes and applications of Road Venture (AT, APT, and MT) tires manufactured, collectively, at Kumho's plants in Korea, Vietnam, and China since 2007.[103] Kumho claims that its Road Venture APT and MT tires may be significantly and materially different from Road Venture AT tires and specifically the Subject Tire, even though they share a common component and are the same model and size.  The Affidavit of Mr. Kim provides the following example:

> [B]elt model WQ33 was utilized in the Subject Tire, and is also utilized in KUMHO TIRE's Road Venture APT KL78 size LT 235/85R16 model and size tire.  However, despite utilizing the same belt model, being the same size and

---

[102] Cottles Aff. ¶¶ 24–25.

[103] Kim Aff. ¶¶ 12–14.

being in the "Road Venture line," the APT (All Season) application results in different dimension, weight, tread pattern and depth, sidewall and bead in each of the products.  In sum, these two products have distinguishing characteristics that make them very different final products despite each one utilizing one same basic component.[104]

At the February 17, 2015 hearing in response to the Court's questioning, Kumho's counsel indicated that most of Kumho's tires use the same belt skim stock, stating "[i]t would not be unusual" for Kumho's AT, APT, and MT tires to have the same skim stock formulation and halobutyl content as the Subject Tire.[105]  Counsel indicated that the differences are specification, the design drawings, and the manufacturing specifications.[106]

Kumho has shown that Plaintiffs' discovery requests that seek discovery pertaining to "SIMILAR TIRES," "SUBJECT MODEL TIRES," "SUBJECT LINE TIRES," as well as requests that are not limited at all, are overly broad and that responding to them would be unduly burdensome.  The Court further finds that the burden and expense to Kumho in producing the discovery sought by these requests outweighs the likely benefit to Plaintiffs.  Thus, the Court is required under Fed. R. Civ. P. 26(b)(2)(C)(iii) to limit the extent of the discovery.

As it has rejected the extreme positions taken by Plaintiffs and Kumho regarding the overall scope of discovery in this case, the Court fashions in the following pages reasonable and practical limits on the scope of discovery in between the two extremes.

---

[104] Kim Aff. ¶ 10.

[105] Mot. Hr'g Tr. 47–49.

[106] Mot. Hr'g Tr. 49.

A.      Requests Seeking Discovery of "SIMILAR TIRES"[107]

Over 30 of Plaintiffs' discovery requests seek information and documents for "SIMILAR TIRES," defined as "all Kumho passenger and light truck tires: (a) utilizing the same amount of halobutyl (by percentage or content) in the innerliner as the Subject Tire; or (b) utilizing the same skim stock formulation as the Subject Tire."  Kumho objects that Plaintiffs' self-serving, expansive definition of "SIMILAR TIRES" would require them to produce documents for hundreds of different passenger and light truck tires.  It asserts that the burden and expense of producing this discovery outweighs the likely benefit under Fed. R. Civ. P. 26(b)(2)(C)(iii).  Plaintiffs attempt to justify the broad scope of their "SIMILAR TIRES" discovery requests based on statements by their expert, Troy Cottles, who opines that in his experience, "no tire manufacturer of aftermarket tires studies tire problems with reference to green tire specifications.  Instead, the focus is on tires that share common materials and design features."[108]  Mr. Cottles further opines that

> a study of the efficacy of the belt coat skim compound in any green tire specification that used that compound would have universal application to all tires that used that compound.  Because the belt skim stock is the most important measure of similarity, especially in a forensic evaluation with regard to failure between these component layers, the fact that Kumho uses the same belt skim stock in most of its passenger and light truck tires would dictate that tires within this group are similar.[109]

---

[107] RFP 14–17, 20, 35–36, 38, 42, 45, 52, 54, 61, 69, 78, 85; and Interrogatories 8 and 16.

[108] Cottles Aff. ¶13.

[109] *Id.* at ¶15.

The Court, however finds Mr. Cottles's statement that "the fact that Kumho uses the same belt skim stock in most of its passenger and light truck tires would dictate that tires within this group are similar"[110] is flawed and refuted by Kumho's expert, Mr. Kim, who convincingly explains that tires can have common components and still be very dissimilar.[111]

The Court sustains all of Kumho's overly broad and unduly burdensome objections to Plaintiffs' First Request for Production and Interrogatories that include the term "SIMILAR TIRES." The Court finds that the burden and expense to Kumho of producing discovery relating to "SIMILAR TIRES" as so defined would outweigh the likely benefit under Rule 26(b)(2)(C)(iii). Kumho has not indicated specifically how many sizes and applications of its passenger and light truck tires would be encompassed within the "SIMILAR TIRES" category. However, based upon the representations of Kumho's counsel that it would not be unusual for many of Kumho's tires to have the same skim stock formulation and inner liner halobutyl content, as well as Mr. Cottles's statement that "most of" Kumho's passenger and light truck tires have the same belt skim stock, the Court can reasonably infer that "SIMILAR TIRES" would be an excessively broad category and likely include a very large number of tires. Kumho has also sufficiently demonstrated through the affidavit of Mr. Kim that these requests "if complied with, would require the disclosure of information on virtually all of [Kumho's] tires, and would seek information on tires that are completely different from the Subject Tire."[112] Mr.

---

[110] Kim Aff. ¶ 15.

[111] *Id.* ¶ 10.

[112] Kim Aff. § 10.

Kim further states that information on any tire that contains even one element in common with the Subject Tire, such as innerliner halobutyl content or skim stock formulation, would include information on tires from "countless different green tire specifications" irrelevant to the Subject Tire, and would be extremely burdensome and expensive to investigate.[113]  The Court rejects Plaintiffs' justification for allowing discovery into such a broad category of Kumho's passenger and light truck tires.  Furthermore, the Court finds that Plaintiffs can obtain the discovery they seek in support of their claims through the much more limited discovery permitted herein without the excessive burden of producing discovery for all the tires encompassed within the "SIMILAR TIRES" category.

**B.    Requests Seeking Discovery of All Kumho Road Venture AT, APT, and MT Tires ("SUBJECT MODEL TIRES")[114]**

Plaintiffs also served a number of discovery requests asking for documents and information pertaining to the "SUBJECT MODEL TIRES" category, which Plaintiffs define as "all Kumho Road Venture tires."  From the briefing and the hearing, the Court finds that this would include the Kumho Road Venture all terrain (AT), all season (APT), and mud (MT) tires, in all sizes.

Kumho objects to producing discovery for the "SUBJECT MODEL TIRES" category of tires, arguing that many of these tires are not substantially similar to the Subject Tire.  Additionally, Kumho claims that it would be required to produce documents for 482 different

---

[113] *Id.*

[114] RFP 10–13, 19, 26, 34, 36, 38, 41, 44, 52, 54, 60, 69, 78, 85, 95, 117; and Interrogatories 6, 8, and 16.

sizes and applications of Road Venture tires manufactured at the three plants, and the burden and expense of producing this discovery would outweigh the likely benefit under Rule 26(b)(2)(C)(iii).

Plaintiffs maintain that they are entitled to discover information regarding Kumho's Road Venture AT, APT, and MT tires of all sizes because these tires have the same defective top belt, innerliner, and/or nylon cap ply configuration as the Subject Tire. They argue that a Kumho Road Venture AT tire, regardless of size, contains the same general components (albeit at different ratios or sizes due to size change), is almost certainly designed by the same group of engineers, and is likely manufactured at the same plants using the same equipment. Plaintiffs suggest that, in addition to sharing the "Road Venture" name, APT and MT tires also have the same components and designers as the Subject AT Tire. They argue that information regarding the design and manufacture of these tires would therefore be relevant to their tire defect theories. Plaintiffs contend that even if such tires do not share the same defective design features, information regarding these tires is still discoverable because it might provide evidence of an alternative design. They point to their expert's affidavit in which he states that the cause of a tread separation, like the one that occurred in the Subject Tire, "can usually be traced to manufacturing and/or design defects relating to the steel belt package, regardless of the model or size of the tire."[115]

As the Tenth Circuit has indicated in ruling on whether evidence pertaining to other products is admissible, "[t]he substantial similarity rule does not require identical products; nor

---

[115] Cottles Aff. ¶ 7.

does it require us to compare the products in their entireties.  The rule requires substantial similarity among the variables relevant to the plaintiff's theory of defect."[116]

Because the Court does not find Plaintiffs' "SUBJECT MODEL TIRES" discovery requests to be overly broad, irrelevant, or unduly burdensome on their face, Kumho, as the party objecting to the discovery, has the burden to support its overly broad and unduly burdensome objections.[117]  To do that, Kumho must convince the Court that Plaintiffs' "SUBJECT MODEL TIRES" category of its Road Venture tires (AT, APT, or MT) are not "substantially similar" to the Subject Tire.  Placing the burden on Kumho also makes sense here because information on whether any of its Road Venture tires are substantially similar to the Subject Tire—in terms of its particular alleged defects—would lie almost exclusively within the control of Kumho at this stage of the litigation.

After extensively reviewing the briefing and affidavits filed in this case, the Court concludes that Kumho has not met its burden to convince the Court that none of its Road Venture AT, APT, or MT tires are "substantially similar" to the Subject Tire, based upon the particular alleged design and manufacturing defects in the Subject Tire.  The Court does not accept Kumho's argument that the only "substantially similar" tires are those identical to the Subject Tire's model and size.

---

[116] *Smith v. Ingersoll–Rand Co.*, 214 F.3d 1235, 1248 (10th Cir. 2000).

[117] *Konecny*, 2014 WL 2804034, at *2 ("Unless a request is overly broad, irrelevant, or unduly burdensome on its face, the party asserting the objection has the duty to support its objections.").

Kumho, however, has persuaded the Court with its arguments that tires manufactured at its two other plants, other than the Vietnam plant, would not be "substantially similar" to the Subject Tire, and Plaintiffs have not provided any persuasive reason justifying discovery of Kumho Road Venture tires manufactured at those plants.  Plaintiffs argue that discovery pertaining to tire design should not be limited to the plant of manufacture because the same tire design could be used across multiple plants.  Plaintiffs fail to convince the Court that this is sufficient reason to allow discovery of Kumho's Road Venture tires manufactured in plants other than the Vietnam plant.  Plaintiffs may pursue their design defect theory based upon other discovery permitted under this order.  Kumho also refutes the underlying assumption of Plaintiffs' expert that many of Kumho's tires are "made on the same machines by the same employees, and . . . subject to the same quality control, testing, and surveillance,"[118] by pointing out that tires manufactured in each of the three Kumho Tire plants (Korea, Vietnam and China) are produced with different equipment, operating procedures and standards.[119]  The Court will therefore limit these discovery requests to tires manufactured at the Vietnam plant.  But even limiting the discovery requests to all Kumho Road Venture tires to the Vietnam plant would require Kumho, by its estimate, to produce documents for 106 different tire sizes and applications.[120]  The Court therefore considers additional limitations.

---

[118] Cottles Aff. ¶¶ 24–25.

[119] *Id*. ¶ 18; *See also* Grant Aff. ¶ 24.

[120] Kim Aff. ¶ 12.

At the hearing, the Court asked Kumho if it could propose an intermediate position that would not be as limiting as its initial position on substantially similar tires. Kumho indicated that something it would "consider" producing would be "information and documents pertaining to the MT tires and the APT tires for the subject size and model."[121]

Limiting "substantially similar" tires to the same size as the Subject Tire appears to be a reasonable limitation. The Court notes that the Code of Federal Regulations considers a tire sold or in use outside the United States to be "substantially similar" to a tire sold or offered for sale in the United States if it has the "*same size*, speed rating, load index, load range, number of plies and belts, and similar ply and belt construction and materials, placement of components, and component materials, irrespective of plant of manufacture or tire line."[122] Same size is the first characteristic listed in the C.F.R. for determining whether a tire is "substantially similar." In addition, Kumho has offered further support for limiting Plaintiffs' discovery requests to the same size tire. As Mr. Kim states in his Affidavit, "[t]ires that have different rim sizes differ significantly in their design, components and operation."[123] Kumho's expert, Mr. Grant, confirms that "[t]ire design and construction vary considerably depending upon the size of the tire in question."[124]

---

[121] Mot. Hr'g Tr. 56–57.

[122] 49 C.F.R. § 579.4(d)(3) (emphasis added).

[123] Kim Aff. ¶ 9.

[124] Grant Aff. ¶ 14.

The Court therefore limits all Plaintiffs' discovery requests that seek documents or information for Kumho Road Venture tires, i.e., "SUBJECT MODEL TIRES," to Kumho Road Venture tires (AT, APT, and MT) that are (1) manufactured at the same Vietnam plant as the Subject Tire, and (2) the same size as the Subject Tire.[125]

### C.   Requests Seeking Discovery of All Kumho Road Venture AT Tires ("SUBJECT LINE TIRES")[126]

As to the third category of tires, which Plaintiffs designate as "SUBJECT LINE TIRES," Plaintiffs ask Kumho to produce discovery pertaining to "all Kumho Road Venture AT tires." Plaintiffs clarified at the February 17, 2015 hearing that their definition of SUBJECT LINE TIRES would include all sizes of Kumho Road Venture AT tires.  Kumho indicated at the hearing that of the 106 different sizes and applications of Road Venture tires manufactured in the Vietnam plant since 2008, about 70 would be Road Venture AT tires.[127]  Kumho further indicated that it would not be unusual for all Kumho Road Venture AT tires to have the same skim stock formulation and halobutyl content as the Subject Tire, which is an AT tire.[128]

---

[125] At the hearing, Kumho's counsel confirmed that "subject model" referred to Road Venture AT, APT, and MT tires (in all the different sizes). Mot. Hr'g Tr. 36. The Court omits "same model" as a limitation here, finding it redundant as the "SUBJECT MODEL TIRES" discovery requests are already limited to Kumho Road Venture tires (AT, APT, and MT).

[126] RFP 6–9, 18, 26, 29, 33, 36, 38, 40, 43, 46, 49–50, 52, 54, 59, 69, 78, 85, 90–91, 95, 117–20; and Interrogatories 5, 8–9, 13, and 16.

[127] Mot. Hr'g Tr. 37.

[128] Mot. Hr'g Tr. 49–50.

For the reasons discussed in the previous section, the Court limits all Plaintiffs' discovery requests that seek documents or information for all Kumho Road Venture tires, i.e., "SUBJECT LINE TIRES," to Kumho Road Venture AT tires (1) manufactured at the same Vietnam plant as the Subject Tire, and (2) the same size as the Subject Tire.

### D.   Requests Where Kumho Objected as Not Limited in Scope to Subject Tire Model and Size[129]

Kumho also objected to many of Plaintiffs' discovery requests that do not contain the defined terms "SIMILAR TIRES," "SUBJECT MODEL TIRES," or "SUBJECT LINE TIRES," but that are not otherwise limited to the Subject Tire.  The Court rules on these tire-scope objections in summary fashion below:

The Court overrules Kumho's overly broad tire-scope objections to RFP 21–22, 32, 93, 98, 109–115, and Interrogatories 11–12, finding that these requests are already limited to the Subject Tire.

The Court sustains Kumho's overly broad tire-scope objections to RFP 67 (internal testing manuals) and 68 (causes of tread separation) to the extent these requests seek production of documents related to "tires in general."  These discovery requests are limited to the Subject Tire.

The Court sustains Kumho's overly broad tire-scope objections to RFP 37, 47–48, 53, 55–56, 62–66, 70–71, 75, 79, 81, 83–84, and 86–89.  The scope of these discovery requests is

---

[129] RFP 21–22, 32, 37, 47–48, 53, 55–56, 62–68, 70–71, 75, 79–81, 83–84, 86–89, 93, 98–115; and Interrogatories 11–12.

46

limited to all Kumho Road Venture AT tires (in all sizes) manufactured at Kumho's Vietnam plant.

The Court sustains Kumho's overly broad objections to RFP 47–48, 62, 86–89 to the extent the requests seek documents generally and not specifically related to Kumho's tires, and refers the parties to the Court's rulings with respect to Kumho's other objections (i.e., lack of temporal time limitation and documents exist in the public domain).

The Court sustains in full Kumho's overly broad and relevancy objections to RFP 80.[130]

The Court sustains Kumho's overly broad tire-scope objections to RFP 99–108, and limits these requests to documents and correspondence concerning Kumho Road Venture AT tires (in all sizes) manufactured at Kumho's Vietnam plant.  The Court further refers the parties to the Court's rulings with respect to Kumho's other objections (i.e., lack of temporal time limitation and documents exist in the public domain).

## IV.    LACK OF TIME LIMITATIONS ON DISCOVERY REQUESTS

In addition to its tire-scope objections, Kumho objected that many of Plaintiffs' discovery requests are not limited in time or to a relevant time period.  At the hearing, the Court commented on the lack of any temporal limitation on many of the discovery requests and indicated that it was inclined to impose a five-year time period.  When the Court asked Plaintiffs what five-year period they would suggest for warranty adjustment information as sought by RFP 18–19, Plaintiffs indicated that they would pick the 2008 manufacture date going forward (2008–

---

[130] RFP 80 requests that Kumho produce "[a]ll court orders sanctioning [it] in any case from September 13, 2001 to the present." ECF No. 65-6.

13).[131]  Kumho advised the Court that it had produced adjustment warranty data from 2010 to

2014.[132]  It explained that the reason it produced adjustment warranty data only as early as 2010

is because it no longer has the data before 2010 due to its document retention policies.[133]  Kumho

confirmed in its First Supplemental Responses that its document retention period for warranty

adjustment data is five years, it produced the adjustment data for 2010–14, and will supplement

the adjustment data for 2009 in a separate supplemental production.  The Court therefore sustains

in part Kumho's overly broad objections and limits RFP 18–19 to the five-year time period

beginning September 1, 2009.

　　　Kumho also asserts overly broad objections to RFP 36–38, which request that Kumho

produce depositions and initial pleadings in Kumho tire tread separation cases.  The Court finds

these requests are overly broad because they are not limited to similar cases involving

substantially similar tires over a defined time period or involving tread separation issues.

Kumho's objections will be sustained in part and RFP 36–38 will be limited to tire tread

separation cases from September 12, 2005 through September 12, 2011.  The Court further limits

RFP 36 and 37 to depositions wherein the deponent actually testified regarding the occurrence or

cause of tire tread separation incidents (as opposed to other issues).  As previously discussed in

Section III.D, RFP 37 is further limited in scope to all Kumho Road Venture AT tires (in all

sizes) manufactured at Kumho's Vietnam plant.  RFP 36 and 38 are subject to the same

---

[131] Mot. Hr'g Tr. 30.

[132] Mot. Hr'g Tr. 45–46.

[133] Mot. Hr'g Tr. 45–46.

"SUBJECT MODEL TIRES" and "SUBJECT LINE TIRES" limitations discussed in Section III.B and C above.

For all other discovery requests where Kumho has objected that they are not limited in time or to a relevant time period, the Court sustains Kumho's overly broad objections and limits them to the five-year time period beginning one year before (or the date the Vietnam plant began manufacturing) and four years after the Subject Tire's September 2008 manufacture date. For discovery requests seeking tire design changes, the five-year time period will commence on the date the Subject Tire was first manufactured.

## V.     OTHER COMMONLY ASSERTED DISCOVERY OBJECTIONS

### A.     Vague and Ambiguous Terms or Phrases

#### (1)     Terms "all component parts" or "any component thereof"

Kumho asserted vague and ambiguous objections to RFP 2–5 and 6–17. Kumho argues that Plaintiffs' failure to clarify their terminology in many of their Requests, often relying on the same vague and ambiguous language, makes it impossible for Kumho to determine what documents are responsive. It claims that Plaintiffs continual use of the indeterminate phrase "component parts," which they later define with a non-exhaustive list of parts, fails to provide any limits to Kumho's potentially burdensome search, and thus does not provide adequate guidance for Kumho to narrow such Requests.

Plaintiffs argue that Kumho has failed to meet its burden to show that the use of the term "component" is vague or ambiguous. They argue that Kumho should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized. Considering its business is tire manufacturing, Plaintiffs question Kumho's claim that it does not know what

Plaintiffs mean by the term "component."  Plaintiffs point out that they clarified in their Golden Rule email that the term "component" includes, but is not limited to, tread, steel belt, inner liner, belt wedge, nylon cap ply, body ply, and bead.  The Court also notes that Kumho's own expert, Joseph L. Grant, identifies the six major "component" categories of a radial tire in his Affidavit.[134]

The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity.[135] A party responding to a discovery request should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in the discovery requests.[136] To clarify their answers or responses, the responding party may include any necessary, reasonable definition of such terms or phrases.[137]

Based upon the clarification provided in Plaintiffs' September 23, 2014 Golden Rule email, the Court finds that Plaintiffs have adequately clarified what they intend by the term "component."  Kumho's vague and ambiguous objections to RFP 2–5 and 6–17 are overruled.

---

[134] Grant Aff. ¶ 11.

[135] *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 310 (D. Kan. 1996).

[136] *See id.* ("Respondents should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories."); *Moss v. Blue Cross & Blue Shield of Kan., Inc.*, 241 F.R.D. 683, 697 (D. Kan. 2007) (party responding to discovery "must show that more tools beyond mere reason and common sense are necessary 'to attribute ordinary definitions to terms and phrases utilized'").

[137] *Pulsecard*, 168 F.R.D. at 310.

### (2)     Phrase "reflect, evidence or describe the manufacturing process"

Kumho asserts vague and ambiguous objections to RFP 39 with respect to the intended scope and meaning of the phrase "reflect, evidence or describe the manufacturing process." Kumho also objects to RFP 40–45 with respect to the terms that ask it to produce documents and correspondence which reflect, discuss, or mention "any changes" to the "manufacturing process" or "design" over time.  Kumho argues that such a broad and ambiguous discovery request does not put it on reasonable notice as to what information and documents it should be searching for, and it should not be forced to guess at Plaintiffs' meaning.  Here, the Court finds that Kumho has not carried its burden to show RFP 39's language asking for "documents which reflect, evidence, or describe the manufacturing process the SUBJECT TIRE went through" is vague or ambiguous.  Nor does the Court find the terms "any changes" to the "manufacturing process" or "design" as used in RFP 40–45 to be vague and ambiguous.  If Kumho uses reason and common sense along with its own knowledge of its tire manufacturing business, it should be able to determine which documents reflect, evidence, or describe the Subject Tire's manufacturing process, as sought by RFP 39.  It should likewise be able to determine what documents reflect, discuss, or mention "any changes" to the "manufacturing process" or in the "design" of the requested tires.  Kumho's vague and ambiguous objections to RFP 39–45 are therefore overruled.

### (3)     Phrase "cost cutting or cost reducing measures"

Kumho also objected to the phrase "cost cutting or cost reducing measures" in RFP 117 as vague and ambiguous.  Plaintiffs argue that Kumho has not met its burden to show that Plaintiffs' use of the term "cost cutting or cost reducing measures" is vague and ambiguous.  If it

exercises reason and common sense to attribute ordinary definitions to the terms used, Kumho cannot claim that it is unaware of the meaning of the term "cost" in the tire manufacturing context.  Plaintiffs point out that they even clarified in their Golden Rule Email that the term includes, but is not limited to, labor and materials.

The Court agrees with Plaintiffs that Kumho, using its knowledge of the tire manufacturing industry and with the clarification provided by Plaintiffs in their Golden Rule Email, should be able to decipher the meaning of RFP 117's phrase "cost cutting or cost reducing measures."  Kumho's objection to RFP 117 is overruled.

### B.    Public Domain

Kumho asserts specific objections to RFP 47–48, 53, 62–63, 68, 89–90, and 99–107 that these requests seek information and documents that exist in ample quantities in the public domain.  Kumho argues that Plaintiffs could just as easily procure such evidence.  For instance, in RFP 62, Plaintiffs seek evidence regarding oxidation of tire rubber but documents about such science can be found by Plaintiffs on their own, including publicly available NHTSA and tire industry technical papers.

According to Plaintiffs, Kumho's objections and argument that the requested documents exist in the public domain and are equally available to Plaintiffs misses the mark.  With respect to the discovery requests seeking documents and correspondence reflecting or discussing inner liner and skim stock issues (RFP 47–48, 62, 90, and 99), Plaintiffs point out that their discovery requests seek Kumho's knowledge of inner liner and skim stock issues, not the knowledge of the world at large.  Kumho's notice of issues that may have led to the defect in the Subject Tire is

clearly relevant to this litigation.  Plaintiffs also argue that an equal accessibility objection by itself is insufficient to resist a discovery request.

"It is well established that discovery need not be required of documents of public record which are equally accessible to all parties."[138]  Thus, if Kumho has responsive documents that are publicly available and equally accessible to Plaintiffs, then it need not produce these documents but instead may refer Plaintiffs to the documents in its discovery responses.  The Court sustains Kumho's objections to RFP 47–48, 53, 62–63, 68, 89–90, and 99–107 to the extent that Plaintiffs' discovery requests seek information and documents that exist in the public domain and that are equally accessible to Plaintiffs.  Kumho need not produce responsive documents in its possession, custody, or control that exist in the public domain and are equally accessible to Plaintiffs.  Kumho shall however state in its discovery responses whether any responsive documents are being withheld[139] under its public domain objections and identify the documents (by title and source) being withheld.

_____

[138] *Snowden By & Through Victor v. Connaught Labs., Inc.*, 137 F.R.D. 325, 333 (D. Kan. 1991) (quoting *Secs. & Exch. Comm. v. Samuel H. Sloan & Co.*, 369 F. Supp. 994, 995 (S.D.N.Y. 1973)).

[139] The Court notes that the proposed amendments to Fed. R. Civ. P. 34, if approved, will require a responding party withholding responsive documents to state whether any documents are being withheld. Although not currently in effect, the Court will require Kumho to state whether it is withholding any documents under its public domain objection and require identification of those documents so that Plaintiffs can seek them out in the public domain.  *See* Proposed Amendments to the Federal Rules of Civil Procedure (June 14, 2014) ("The third amendment to Rule 34 requires that an objection state whether any responsive materials are being withheld on the basis of the objection."), http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/Reports/ST09-2014-add.pdf.

### C.    Premature Expert Disclosures

Kumho objects to RFP 49–50, 53, 62–64, 68–69, 85–88, 93, 95, 98–108; and

Interrogatories 13 and 15 to the extent they seek premature disclosure of Kumho's experts and

information they may rely on to reach their opinions.  It argues that these are objectionable

because Plaintiffs are prematurely requesting information that should more appropriately be

provided during expert discovery.  According to Kumho, technical information, including

explanations about tread separation and permeability, should be properly provided through its

expert reports and opinions and not through fact discovery.  Kumho also points out that Plaintiffs

made similar objections in response to its own discovery requests.

Plaintiffs argue that they seek to discover Kumho's knowledge of a topic relevant to their

defect theories and therefore production of the requested materials does not require input from

Kumho's experts.  Plaintiffs contend that Kumho has a duty to respond to the request with the

information it possesses and may later supplement its responses under Fed. R. Civ. P. 26(e).

The Court sustains Kumho's premature expert discovery objections.  Kumho may delay

answering Interrogatories 13 and 15 and producing documents responsive to RFP 49–50, 53, 62–

64, 68–69, 85–88, 93, 95, 98–108 until after it has served its expert disclosures, which are due

May 6, 2015.  Kumho shall produce this responsive expert discovery information or documents

by the June 18, 2015 discovery deadline.

### D.    "All" Documents and Other Omnibus Words

Kumho also objects to many of the discovery requests because they ask for "all"

documents, which makes them overly broad and unduly burdensome.  It argues that Plaintiffs'

use of omnibus words and phrases, including "any," "all," "concerning," "regarding," and

"reflecting" with respect to a general category or group of documents make Plaintiffs' discovery requests unduly burdensome on their face.

Plaintiffs argue that Kumho's argument regarding Plaintiffs' use of the word "all" in its discovery requests is misplaced. Plaintiffs assert that they have met their duty to state their discovery requests with reasonable particularity. Rather than asking Kumho for "all documents" relating or referring to the allegations in this case, Plaintiffs have requested "all documents" relating to certain specific categories of information, which is not objectionable.

The Court agrees that Plaintiffs' use of the word "all" in their document requests, in which they ask for "all documents," is not objectionable as the particular requests are otherwise appropriately tailored to request specific categories of information. As Kumho appears to have lodged this objection to every discovery request containing the words "all documents," the Court considers them to be disfavored boilerplate objections. Kumho's objections that the requests asking for "all" documents or using other omnibus words are overly broad and unduly burdensome are overruled.

### E.       Marshal the Evidence

Kumho objects to RFP 53, 62, 66, 78, 78–81, 85–88, 95, 99–108, 110–15, and 117–20 because they require it to "marshal the evidence." It argues that Plaintiffs are improperly asking it to marshal and provide evidence for their case where Plaintiffs could just as easily procure such evidence themselves. Kumho asserts that it should not be required to conduct a survey of the literature on tread separation and present that to Plaintiffs.

Plaintiffs argue that Kumho's objection that the Requests require it to marshal the evidence is rare and misplaced. They argue that the duty to marshal evidence is present during

substantive proceedings, like trials or summary judgment hearings, and requires a party to direct the court to the places in the record where evidence exists to support their positions. Plaintiffs agree that a parallel can be drawn between a party's duty to direct the court to evidence and a discovery proponent's duty to state requests with reasonable particularity so as to direct the receiving party to the information sought. Plaintiffs cite *Grynberg v. Total S.A.*[140] wherein the defendant lodged a marshal-the-evidence objection to an interrogatory that sought all material facts and documents supporting the defendant's denials or affirmative defenses. Plaintiffs assert that their requests are not like the interrogatory in *Grynberg* because they have asked Kumho to produce specific categories of information relevant to their tire defect theories.

The Court overrules Kumho's objections that Plaintiffs' discovery requests require it to marshal the evidence. Kumho cites no controlling legal authority to support its many marshal-the-evidence discovery objections. Nor do Plaintiffs' discovery requests require Kumho to survey the literature on tire tread separation and present the information it finds to Plaintiffs. Under Fed. R. Civ. P. 34(a)(1), Kumho is only required to produce responsive documents in its "possession, custody, or control." Kumho has failed to substantiate its marshal the evidence objections and they are therefore overruled.

**F.     Customer Privacy**

Kumho objects to RFP 33–35, which seek customer tire tread separation "claims, complaints, notices, and lawsuits," on the grounds that these requests invade the reasonable privacy expectations of its consumers that their correspondence was between them and Kumho,

_____

[140] No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *5–7 (D. Colo. May 3, 2006).

and not for general public consumption.  Kumho objects to producing documents generated by third-party consumers, which would place them into the public domain.  Plaintiffs contend that concerns about the disclosure of private or sensitive information alone is not a sufficient basis to withhold discovery and can be addressed by entry of a protective order limiting the disclosure of such information.  Plaintiffs argue that their interest in discovering information about defects in the tire that caused their injuries outweighs the privacy interests of Kumho's customers, who arguably waived those privacy rights when they filed their lawsuits against Kumho.

The Court agrees with Plaintiffs that Kumho's concerns with producing documents that may disclose information of its customers related to other tire claims, complaints and lawsuits can be adequately addressed by producing the information subject to the Protective Order. Kumho's customer privacy objections to RFP 33–35 are therefore overruled.

### G.      Attorney-Client Privilege and/or Work Product Doctrine

Kumho originally objected to RFP 1 and 25 to the extent that they seek information protected by the attorney-client privilege and/or the work product doctrine.  At a telephone status conference on March 10, 2015, the Court asked Kumho's counsel whether Kumho withheld any documents on the basis of the attorney-client privilege or as work product.  The Court thereafter ordered Kumho to serve supplemental discovery responses to Plaintiffs' discovery requests that either (1) state that no responsive documents are being withheld on the basis of attorney-client privilege or as work product, or (2) identify the discovery responses for which responsive documents are being withheld on the basis of attorney-client privilege or as work product and provide a privilege log for all documents being withheld.  The Court further notes that Kumho did not reassert its objections based upon the attorney-client privilege and work product doctrine

in response to Plaintiffs' motion to compel discovery. The Court therefore finds that Kumho has abandoned its attorney-client privilege and work product objections to RFP 1 and 25, and the Court need not make any further ruling with respect to them.

## VI.   REMAINING OBJECTIONS TO SPECIFIC DISCOVERY REQUESTS

### A.   Smithers Report

**RFP 94**: All Smithers reports pertaining to SUBJECT LINE TIRES or SUBJECT MODEL TIRES and all competitor tires to the SUBJECT LINE TIRES or SUBJECT MODEL TIRES obtained by you or any of your affiliates in the past seven years ("reports" as used in this Request refers to Smithers reports that contain chemical and/or physical analyses of tires).

Kumho objects that the Smithers Scientific Services reports sought are protected by intellectual property laws. It asserts that even if it had a report prepared by Smithers in its possession, it would be illegal for it to produce it to Plaintiffs and it could be prosecuted for doing so. It claims that it therefore does not have the required "possession, custody, or control"[141] of the Smithers reports, which would enable it to produce the reports to Plaintiffs.

Plaintiffs note in their Reply that Kumho took issue with RFP 94 in its Reply, but Plaintiffs' arguments regarding those requests were not reasserted in their Motion to Compel. Accordingly, RFP 94 is not before the Court for consideration and the Court declines to compel Kumho to respond to it.

### B.   Kumho's Analysis of Competitor Tires

**RFP 95:** All documents and correspondence that concern, mention, discuss, relate to and/or depict the reverse engineering and analysis of competitor tires to the SUBJECT LINE TIRES or SUBJECT MODEL TIRES (please note that "reverse

---

[141] Fed. R. Civ. P. 34(a)(2).

engineering" in this request *refers* to cutting or otherwise tearing apart, and/or chemically analyzing, a cured tire from a competitor to determine its components, how it was assembled, and/or what its components *are* made of).

The Court sustains Kumho's relevance objections to this Request.  Plaintiffs have failed entirely to demonstrate the relevance of this request—which seeks discovery into Kumho's reverse engineering of "competitor tires"—to Plaintiffs' claims related to the Subject Tire in *this* case.  The Court denies Plaintiffs' motion to compel as to RFP 95 and Kumho need not respond to it.

### C.   Cost and Profitability of the Subject Tire and Substantially Similar Tires

RFP 119–120 ask Kumho to produce documents and correspondence regarding profitability for Kumho Road Venture AT tires:

> **RFP 119:** All documents and correspondence regarding the profit you made on the sale of the SUBJECT TIRE and SUBJECT LINE TIRES.

> **RFP 120:** All documents and correspondence regarding, reflecting or discussing the profitability of the SUBJECT LINE TIRES as compared to any other tire.

As to RFP 119 and 120, the Court sustains Kumho's relevance and unduly burdensome objections in full.  The Court fails to see the relevance of the discovery sought by these requests, and Plaintiffs have not otherwise shown them to seek relevant information.  Furthermore, the Court finds that responding to RFP 120 would be unduly burdensome because it requires Kumho to make comparisons to the unlimited category of "any other tire."  The Court denies Plaintiffs' motion to compel as to RFP 119–20 and Kumho need not respond to them.

## VII.   EXPENSES

Fed. R. Civ. P. 37(a)(5)(C) provides that when a motion is granted in part and denied in part, "the court may . . . after giving an opportunity to be heard, apportion the reasonable

expenses for the motion."  Neither Plaintiffs nor Kumho specifically requested an award of

reasonable expenses, including attorney's fees, incurred in filing or responding to this motion.

Under the circumstances of this motion, the Court finds that each party shall bear its own

expenses related to this motion.

**IT IS THEREFORE ORDERED THAT** Plaintiffs' Motion to Compel Discovery (ECF

No. 65) is granted in part and denied in part.  Plaintiffs' motion is GRANTED as to RFP 2–13,

18–19, 21–34, 36–41, 43–44, 46–60, 62–79, 81–93, 96–118, Interrogatories 5, 7–9, and 13–16.

The motion is DENIED as to RFP 14–17, 20, 35, 42, 45, 61, 80, 94–95, 119–120, Interrogatories

6 and 10–12.  **Within thirty (30) days of the date of this Memorandum and Order**, Defendant

Kumho shall serve amended answers responsive to Plaintiffs' Interrogatories 5, 7–9, 13–16, and

produce documents responsive to Plaintiffs' RFP 2–13, 18–19, 21–34, 36–41, 43–44, 46–60, 62–

79, 81–93, and 96–118, all of which are limited in accordance with the Court's specific objection

rulings herein.

**IT IS FURTHER ORDERED THAT** Kumho's Heightened Protection Objections to

RFP 21–24, 26, 37, 39–48, 57–67, 69, 74, 83–85, 90–91, 93, 95–107, 113–116, and

Interrogatories 10–12 are sustained in part.  Kumho may redact its closely guarded skim stock

formulas and skim stock compounds from any documents responsive to these discovery requests,

but must otherwise produce responsive documents.  It need not answer Interrogatories 10–12.

**IT IS FURTHER ORDERED THAT** Plaintiffs' request for Kumho to produce a trade

secrets log is denied.

**IT IS FURTHER ORDERED THAT** Kumho's tire-scope overly broad and unduly

burdensome objections to all of Plaintiffs' discovery requests that use the defined term

"SIMILAR TIRES" are sustained in full.  Kumho need not respond to RFP 14–17, 20, 35, 42, 45, and 61.  It need not respond to RFP 36, 38, 52, 54, 85 and Interrogatories 8 and 16 to the extent these discovery requests seek discovery of "SIMILAR TIRES."

**IT IS FURTHER ORDERED THAT** Kumho's tire-scope overly broad and unduly burdensome objections to all of Plaintiffs' discovery requests using the defined term "SUBJECT MODEL TIRES" are sustained in part.  The Court limits all of Plaintiffs' discovery requests that seek documents or information for all Kumho Road Venture tires, i.e., "SUBJECT MODEL TIRES," to Kumho Road Venture tires (AT, APT, and MT) that are (1) manufactured at the same Vietnam plant as the Subject Tire, and (2) the same size as the Subject Tire.

**IT IS FURTHER ORDERED THAT** Kumho's tire-scope overly broad and unduly burdensome objections to all of Plaintiffs' discovery requests using the defined term "SUBJECT LINE TIRES" are sustained in part.  All Plaintiffs' discovery requests that seek documents or information for Kumho Road Venture AT tires, i.e., "SUBJECT LINE TIRES," are limited to Kumho Road Venture AT tires (1) manufactured at the same Vietnam plant as the Subject Tire, and (2) the same size as the Subject Tire.

**IT IS FURTHER ORDERED THAT** Kumho's tire-scope overly broad and unduly burdensome objections to RFP 21–22, 32, 93, 98, 109–115, and Interrogatories 11–12 are overruled.

**IT IS FURTHER ORDERED THAT** Kumho's tire-scope overly broad and unduly burdensome objections to RFP 37, 47–48, 53, 55–56, 62–68, 70–71, 75, 79–81, 83–84, 86–89, and 99–108 are sustained in part.  See Section III.D of this Order for details.

**IT IS FURTHER ORDERED THAT** Kumho's time-scope overly broad objections to RFP 18–19 (warranty adjustment information) are sustained, and these requests are limited to the five-year time period beginning September 1, 2009.

**IT IS FURTHER ORDERED THAT** Kumho's time-scope overly broad objections to RFP 36–38 (depositions and initial pleadings) are sustained, and these requests are limited to tread separation cases from September 12, 2005 through September 12, 2011.  The Court further limits RFP 36 and 37 to depositions wherein the deponent actually testified regarding the occurrence or cause of tire tread separation incidents (as opposed to other issues).  As previously discussed in Section III.D, RFP 37 is further limited in scope to all Kumho Road Venture AT tires (in all sizes) manufactured at Kumho's Vietnam plant.  RFP 36 and 38 are subject to the same "SUBJECT MODEL TIRES" and "SUBJECT LINE TIRES" limitations discussed in Section III.B and C.

**IT IS FURTHER ORDERED THAT** all other discovery requests where Kumho has objected that they are not limited in time or to a relevant time period are limited to the five-year time period beginning one year before the Subject Tire's September 2008 manufacture date (or the date the Vietnam plant began manufacturing) and four years after the Subject Tire's September 2008 manufacture date.  For discovery requests seeking tire design changes, the five-year time period will commence on the date the Subject Tire was manufactured.

**IT IS FURTHER ORDERED THAT** Kumho's public domain objections are sustained. Kumho need not produce responsive documents that exist in the public domain and are equally accessible to Plaintiffs.  Kumho shall however state whether any responsive documents are being

withheld on the basis of its public domain objection and identify the documents (by title and source) being withheld.

**IT IS FURTHER ORDERED THAT** Kumho's objections that Plaintiffs' discovery requests seek premature disclosure of its expert opinions are sustained.  Kumho may delay answering or producing documents responsive to any discovery requests where Kumho objected on this basis until after it has served its expert disclosures, which are due May 6, 2015.  Kumho shall produce this responsive expert discovery information or documents by the June 18, 2015 discovery deadline.

**IT IS FURTHER ORDERED THAT** Kumho's objections that the requests are (1) vague and ambiguous, (2) seek "all" documents or use other omnibus words, (3) invade the privacy of its customers, and (4) require it to marshal the evidence are overruled.  All other objections not reasserted by Kumho in its Response to Plaintiffs' Motion to Compel Discovery are deemed abandoned and overruled.[142]

IT IS SO ORDERED.

Dated this 15th day of April 2015, at Kansas City, Kansas.


*s/ Teresa J. James*
Honorable Teresa J. James
U.S. Magistrate Judge

---

[142] *See Booth v. Davis*, No. 10-4010-RDR, 2014 WL 3542059, at *1 (D. Kan. July 17, 2014) ("Objections initially raised but not asserted in the objecting party's response to a motion to compel are deemed abandoned.").